COURT OF APPEALS,

Oct., 1907.

# THE PEOPLE ex rel. CHARLES BURNHAM v. WILLIAM FLYNN, WARDEN.

(189 N. Y. 180.)

(1). CONSPIRACY—PENAL CODE, SECTION 168, SUBD. 5—WHEN EXCLUSION OF A DRAMATIC CRITIC FROM THEATERS CONTROLLED BY MEMBERS OF A THEATER MANAGERS' ASSOCIATION IS NOT A CONSPIRACY.

The exclusion of a dramatic critic from theaters controlled by members of a Theater Managers' Association, in consequence of a statement made to the association by one of its members, to the effect that the critic had written and published articles attacking the personal integrity of the members and containing malicious, scurrilous and unjustifiable attacks upon Jewish patrons of the theaters, by which the business of the theaters might be injured— in which statement it was recommended that some action should be taken to protect the members and their business interests— does not constitute an attack upon or conspiracy against the right of the critic to exercise his calling as a dramatic critic, within the meaning of the statute defining conspiracy (Penal Code, § 168, subd. 5), but was an effort on the part of the managers to protect themselves from public articles reflecting upon their personal integrity and a protest against unjustifiable attacks upon their patrons and members of the Jewish faith; and, in excluding the critic from their theaters, the members of the association acted within their strict legal rights.

(2). RIGHT OF THEATER MANAGERS TO EXCLUDE PERSONS FROM THEIR THEATERS.

In the absence of any express statute controlling his action, the proprietor of a theater has the right to decide who shall be admitted to witness the plays he sees fit to produce. He derives from the state no authority to carry on his business and may conduct the same precisely as any other private citizen may transact his own affairs.

(3). EXCLUSION OF TICKET HOLDER FROM THEATER—REMEDY AND AMOUNT OF RECOVERY.

If the holder of a ticket, which entitles him to a seat at a

29

given time in a place of amusement, is refused admission, he is entitled to recover in an action for breach of contract the amount paid for the ticket, and the necessary expenses incurred in order to attend the performance.

*People ex rel. Burnham* v. *Flynn,* 114 App. Div. 578, affirmed.

. Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 23, 1906, which reversed an order of Special Term dismissing a writ of habeas corpus, reinstated said writ and directed the discharge of the relator from custody.

The facts, so far as material, are stated in the opinion.

*James W. Osborne* for appellants. The agreement in the case at bar was corrupt, *i. e.,* there was evidence of criminal intent. (1 Bishop's New Cr. Law. §§ 205, 287, 343; 1 Bishop's New Cr. Pro. §§ 1100, 1101; *People* v. *Flack,* 125 N. Y. 334.) The agreement was to prevent Metcalfe, by force, from exercising a lawful calling. (*Nat. Prot. Assn.* v. *Cumming,* 170 N. Y. 315; *Levi* v. *Levi,* 6 C. & P. 239; *People ex rel. Gill* v. *Smith,* 10 N. Y. S. R. 730; *Rex* v. *Eccles,* 1 Leach C. C. 274; *B. U. Co.* v. *C. C. Co.,* 111 U. S. 757; *Bertholf* v. *O'Reilly,* 74 N. Y. 515; *Curran* v. *Galen,* 152 N. Y. 37; *Rex* v. *Gillon,* 1 Moody, 85; *Reg.* v. *Hamp,* 6 Cox C. C. 167; *People* v. *Sheldon,* 139 N. Y. 257.) The agreement was to do an act injurious to trade. (*Gravely* v. *Bernard,* L. R. [18 Eq.] 518; *Sainter* v. *Ferguson,* 7 C. B. 716; *Mott* v. *Mott,* 11 Barb. 127; *Holbrook* v. *Waters,* 9 How. Pr. 335; *Dendy* v. *Henderson,* 11 Ex. 114; *May* v. *O'Neill,* 44 L. J. Ch. 660; *Bunn* v. *Gray,* 4 East, 190; *Whittaker* v. *Howe,* 3 Beav. 383; *Curran* v. *Galen,* 152 N. Y. 36; *Butchers' Union* v. *C. C. Co.,* 111 U. S. 746; *People* v. *Gillson,* 109 N. Y. 398.) A theater is not a private place in the sense that the proprietor or manager thereof may arbitrarily exclude persons therefrom. (Penal

Code, § 383; *Donnell* v. *State,* 48 Miss. 661; *Collister* v. *Hayman,* 183 N. Y. 250.)

*Herman Aaron* for respondent. The proprietor of a theater has an absolute right to say whom he will or will not admit to his theater. (*Purcell* v. *Daly,* 19 Abb. [N. C.] 303; *Collister* v. *Hayman,* 71 App. Div. 316; *C. T. Co.* v. *Smith,* 18 N. Y. S. R. 27; *Burton* v. *Scherff,* 83 Mass. 133; *Greenburg* v. *Western Turf Assn.,* 140 Cal. 357; Wandel's Law of the Theater, 221; 28 Am. & Eng. Ency. of Law [2d ed.], 124.) The only qualification in the law as to the absolute right of exclusion is that established by the Civil Rights Act, chapter 1042 of the Laws of 1895, but that act has no application to this case. (*Collister* v. *Hayman,* 183 N. Y. 257.) A criminal conspiracy consists in the unlawful combination to do an act unlawful in itself, or to do a lawful act by unlawful means. In neither respect is a conspiracy made out in this case. (*Mills* v. *U. S. P. Co.,* 99 App. Div. 608; *Jacobs* v. *Cohen,* 183 U. S. 207.)

EDWARD T. BARTLETT, J. Complaint was made to a magistrate in the city of New York charging relator, Charles Burnham, with violating section 168, subdivision 5, of the Penal Code, which reads as follows: " § 168. Conspiracy defined.— If two or more persons conspire, either * * * 5. To prevent another from exercising a lawful trade or calling, or doing any other lawful act, by force, threats, intimidation, or by interfering or threatening to interfere with tools, implements, or property belonging to or used by another, or with the use or employment thereof. * * * Each of them is guilty of a misdemeanor."

After examination before the magistrate, the relator, Burnham, was taken into custody by virtue of a commitment then issued. Thereupon he sued out a writ of habeas corpus. After a hearing the Special Term made an order dismissing the

writ and remanding the relator to custody.   The Appellate Division reversed this order, reinstated the writ and discharged the relator.   From the latter order this appeal was taken by the defendants.

The petition for the writ alleged, among other facts, the following: That the relator, Charles Burnham, is a theatrical manager, and particularly manager of the theater known as Wallack's Theater, situated at Thirtieth street and Broadway, in the city of New York; that the cause of imprisonment of petitioner is that he was and is a member of' an association of theater managers having for its general object the promotion of the interests and welfare of the theatrical industry, in which the members of said association are interested; that while a number of the members of the association were holding a meeting the petitioner called attention of the members to certain scurrilous, libelous and malicious attacks made by one James S. Metcalfe upon some of the members of the association, affecting their personal integrity and holding their religion up to ridicule; that petitioner at such meeting, or immediately after formal adjournment, presented and read to the members a written statement, as follows: " The attention of this association is called to the following matter: A certain writer on a certain periodical has for the past ten years persistently and without just cause libeled in its columns a large portion of our theater-goers and attacked the personal integrity of members of this association.   Its continued malicious, vile and unjustifiable attacks upon those of the Jewish faith are unwarranted, and as it may affect our business interests should receive attention from all managers.   For their so-called criticism on plays or business methods we make no mention—that does not concern us and is without our province—but when they persistently and for no discernible just cause (but a personal feeling, perhaps) make a butt of one's religion—be his faith what it may —then some action should be taken to give the members of this

association so assailed its vote of confidence and support and to take necessary steps to prevent our business interests being injured."

It further appears in the petition that no resolution was passed at the meeting where this statement was read, but that thereafter said Metcalfe was, by the purely voluntary action of individuals controlling their own theaters, in several instances excluded from such theaters, not including, however, the theater controlled by the petitioner, and that thereupon the magistrate issued his mandate herein, ordering the arrest of the petitioner. The petition proceeds with certain formal allegations and prayed that the writ of habeas corpus might issue to the end that after hearing relator be discharged from custody.

The return to the writ is exceedingly brief and formal, and the relator duly traversed the same. A hearing was had before the magistrate; the controlling facts are undisputed. It was proved that the relator did appear at this gathering of theater managers and read the statement, after formal adjournment, to which reference has already been made, and that later certain informal discussion and proceedings took place, when the managers separated. It also appears that sometime thereafter said James S. Metcalfe, although provided with tickets of admission, was, without undue violence, prevented from entering some nine theaters in the city of New York, many or all of which were managed or controlled by a member or members of the so-called " Theater Managers Association."

On this general state of facts, Metcalfe, acting as complainant, charged the relator, Burnham, with a violation of section 168, subdivision 5, of the Penal Code, in that he had sought to prevent complainant from exercising his lawful trade or calling as a dramatic critic, which he had followed for many years. The city magistrate found the relator guilty as charged, and committed him to the custody of the warden of the city prison.

the relator duly traversed the same.     A hearing was had be-

We agree with the conclusion reached by the learned Appellate Division.     In the view we entertain of the case as presented to the city magistrate it is unnecessary to construe the section of the Penal Code upon which the proceeding is founded. It is proved that the object of the relator, Burnham, and the other theater managers associated with him, was not to attack or rebuke Metcalfe in the legitimate exercise of his calling as a dramatic critic.     The statement presented by the relator at the meeting of the theater managers avers, referring to certain alleged libelous articles appearing in the periodical for which Metcalfe wrote, as follows: " For their so-called criticism on plays or business methods we make no mention—that does not concern us and is without our province—but when they persistently and for no discernible just cause (but a personal feeling, perhaps) make a butt of one's religion—be his faith what it may—then some action should be taken to give the members of this association so assailed its vote of confidence and support and to take necessary steps to prevent our business interest being injured."

We have here a clear and uncontradicted avowal of the motive that led the managers to exclude Metcalfe from their respective theaters.     It was not an attack upon his right to exercise his calling as a dramatic critic, but an effort on the part of the managers to protect themselves from public articles reflecting on their personal integrity and a protest against unjustifiable attacks upon their patrons and members of the Jewish faith.     It would be quite out of place, owing to its character, to quote from an article (Exhibit A) written, signed and admitted by Metcalfe as genuine, and introduced in evidence by the relator, which is, to speak with moderation, an unexampled illustration of race bitterness and hatred.     A dramatic critic indulging in such intemperate language may reasonably expect to arouse unpleasant antagonisms.

The remaining question in the case is whether the proprietor of a theater has the right to decide who shall be admitted to witness the plays he sees fit to produce in the absence of any express statute controlling his action. At this late day the question cannot be considered as open in this state. There are a number of cases arising out of the purchase of theater tickets from speculators on the sidewalk after notification by the proprietor that the same will not be honored at the door. (*Collister* v. *Hayman*, 183 N. Y. 250; *S. C.*, 71 App. Div. 316; *Purcell* v. *Daly*, 19 Abb. [N. C.] 303.) These cases illustrate the absolute control that the proprietor of a theater exercises over the house and the audience. He derives from the state no authority to carry on his business, and may conduct the same precisely as any other private citizen may transact his own affairs.

In *Burton* v. *Scherpf* (83 Mass. 133) it was held that the sale of a ticket of admission to a concert is only a revocable license to the purchaser to enter the building in which it is given, and to attend the performance; and, if revoked before the performance has commenced, and before he has taken the seat to which the ticket entitles him, and he remains therein after notice of the revocation and refuses to depart upon request, he becomes a trespasser, and may be removed by the use of force necessary for the purpose, and his only remedy therefor is by action upon the contract.

The holder of a ticket which entitles him to a seat at a given time in a place of amusement, being refused admission, is entitled to recover the amount paid for the ticket, and, undoubtedly, such necessary expenses as were incurred in order to attend the performance.

The case of *Commercial Telegram Co.* v. *Smith* (47 Hun, 494) involves a kindred principle. It was an action brought to restrain the defendants, the president of the New York

Stock Exchange and others, from interfering with the plaintiff in collecting upon the floor of the exchange the quotations of dealings in stock and distributing the same to its customers.   Certain correspondence had passed between the parties and resulted in what was afterwards held by the court as a mere negotiation, which did not amount to a binding contract, permitting the plaintiff to carry on its business upon the floor of the exchange.   The plaintiff, misconceiving the force and effect of this correspondence, went on and made large expenditures in the preparation of its wires and instruments for the purpose of carrying on its business upon the floor of the exchange, all of which would be entirely useless if it was denied the privilege for which application had been made.   It was also urged that even assuming the correspondence did not sustain a contract, nevertheless considerations of public policy would uphold the claim of the plaintiff.   The learned General Term in the first department (VAN BRUNT, P. J., writing the opinion) said as to this point: " The claim that the Stock Exchange has no right to exclude the Commercial Telegram Company from the floor upon the ground of public policy evidently proceeds upon an entirely erroneous theory.   The Exchange is a private association; it has the right to admit to its floor whom it pleases; it obtains nothing from the State except that protection which the law affords to every citizen; it has sought no special privilege and obtained no special powers.   It is, therefore, just as much the master of its own business and of the method of conducting the same as any private individual within the State. It may make public the transactions which occur within its walls or it may refuse all information in respect thereto.   No matter which course is pursued, so long as it violates no law, it has a right to conduct its business as it pleases."   This language is particularly apposite to the case at bar.

We are of opinion that the relator and his associates in the

Theater Managers Association acted in the exercise of their strict legal rights.

The order of the Appellate Division appealed from should be affirmed, with costs.

CULLEN, Ch. J., O'BRIEN, HAIGHT, VANN, HISCOCK and CHASE, JJ., concur.

Order affirmed.