LUXENBERG v. KEITH & PROCTOR AMUSEMENT CO.

(Supreme Court, Appellate Term.   June 18, 1909.)

1. THEATERS AND SHOWS (§ 4*)—NATURE OF BUSINESS.
    Conducting a theater is a private business, and the proprietor has a right to govern it, so far as the public is concerned, by such rules as he may see fit to make, and to exclude whomsoever he desires.
    [Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 4; Dec. Dig. § 4.*]

2. THEATERS AND SHOWS (§ 4*)—EXCLUSION OF TICKET HOLDER—DAMAGES.
    A holder of a ticket to a theater, who is denied admission, in the absence of allegation or proof of special damages, is entitled to recover the amount paid for the ticket, together with such other expense as he may have been put to, directly connected with the issuing of the ticket; but cannot recover compensatory damages for disappointment or humiliation suffered by reason of being denied admission.
    [Ed. Note.—For other cases, see Theaters and Shows, Dec. Dig. § 4.*]
    Dayton, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Eighth District.

Action by Rebecca Luxenberg against the Keith & Proctor Amusement Company. From a judgment awarding inadequate relief plaintiff appeals. Affirmed, with leave to appeal to the Appellate Division.

Argued before DAYTON, SEABURY, and LEHMAN, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Jacob Bernstein, for appellant.
Maurice Goodman, for respondent.

SEABURY, J. This action was brought to recover damages for breach of contract, and the only question presented for our determination is the measure of the damages to be awarded the plaintiff. The plaintiff purchased four tickets at the box office of the defendant's theater. When these tickets were presented, the plaintiff and her three friends were denied admittance. The statement that the plaintiff was expelled and ejected from the theater conveys a wrong idea of what took place. The fact disclosed by the evidence is that the defendant's agent refused to accept the tickets when they were tendered and told the plaintiff and her friends to "get out." Special damage was neither alleged nor proved, and the court below directed judgment for the plaintiff for $2, the amount of the purchase price of the tickets.

Many of the authorities upon which the appellant relies are cases of common carriers, and seem to me to be inapplicable to the case now under consideration. In Purcell v. Daly, 19 Abb. N. C. 301, the court very clearly stated what I understand to be the correct rule applicable to this case. The court there said:

"The theater is owned by the defendant, is private property, and is governed, so far as the public is concerned, by such rules and regulations as the defendant may see fit to make. It is in no sense a public enterprise, and is consequently not governed by the same rules which relate to common carriers or other public institutions of a like character. * * * This being so, the proprietor of a theater has a perfect right to say whom he will or will not admit to his theater, and should any one apply at the box office of a theater, and desire to purchase tickets of admission, and be refused, there can be no question that he would have no cause of action against the proprietor of the theater for such refusal. And in the same way, if tickets are sold to a person, the proprietor may still refuse admission, in which case the proprietor would be compelled to refund only the price paid for the tickets of admission together with such other expense as the party might have been put to, but which expense must be directly connected with the issuing of the ticket of admission; for he could not accept money for the right of admission to his theater, and then, upon refusing that admission, seek to retain possession of the price of the privilege. A theater ticket is simply a license to the party presenting the same to witness a performance to be given at a certain time, and, being a license personal in its character, can be revoked."

In Collister v. Hayman, 183 N. Y. 250, 76 N. E. 20, 1 L. R. A. (N. S.) 1188, 111 Am. St. Rep. 740, the court, through Judge Vann, noted the legal difference between the position of a proprietor of a theater and that of a common carrier. "A theater," said Judge Vann, "may be licensed, like a circus; but the license is not a franchise, and does not place the proprietors under any duty to the public, or under any obligation to keep the theater open." Again, in the same opinion, he points out that:

"Unlike a carrier of passengers, for instance, with a franchise from the state, and hence under obligation to transport any one who applies, and to continue the business year in and year out, the proprietors of a theater can open and close their place at will, and no one can make lawful complaint."

These rules were recognized in People ex rel. Burnham v. Flynn, 189 N. Y. 180, 82 N. E. 169, and in that case the court stated the rule

of damages to be applied to a case where the purchaser of a theater ticket is denied admission in the following language:

"The holder of a ticket which entitled him to a seat at a given time in a place of amusement, being refused admission, is entitled to recover the amount paid for the ticket, and, undoubtedly, such necessary expenses as were incurred in order to attend the performance."

There is no suggestion in this statement that the holder of a ticket may recover damages to compensate him for the disappointment or humiliation which he may have suffered by reason of his being wrongfully denied admission to the theater. The statement quoted above from Purcell v. Daly, supra, not only does not contain such a suggestion, but in positive language expressly negatives such an inference. The ruling of the court below was correct, and the judgment should be affirmed, with costs.

Judgment affirmed, with costs, with leave to appeal to the Appellate Division.

LEHMAN, J., concurs.

DAYTON, J. (dissenting). Action for damages. Verified complaint, alleging that on January 13, 1909, plaintiff purchased at the box office of defendant's theater four tickets for a matinee performance January 16, 1909, for herself and guests, and paid therefor $2, whereby she was entitled to admission to said theater; that on January 16, 1909, she with her friends presented said tickets at said place, but defendant's agents and servants without just cause refused admission and insolently ordered plaintiff and her friends to leave the theater, all in the presence and within the hearing of divers persons, by reason of which she has suffered indignity, humiliation, disgrace, and injury to her feelings, to her damage $500. The answer was practically a general denial. The cause was tried before a judge and jury. The latter, by direction of the court, found a verdict against the defendant for $2, the price of the tickets. From the judgment entered upon that verdict, plaintiff appeals.

The record shows that on January 16th plaintiff, with a woman guest from out of this city, another woman, and plaintiff's son, went to defendant's theater and presented the tickets, bought and paid for at defendant's box office January 13th. Admission was refused by the doorkeeper on the sole ground that the tickets had been purchased from a ticket speculator. Plaintiff was told by defendant's employé to "get out." She proceeded to the box office, and was there met with the response: "Don't bother me. I am busy. Get out." She left with her party, retaining the tickets so refused. Many people were present during this happening. Defendant offered no testimony. The question presented is whether plaintiff is limited in her recovery to the price paid for the tickets and her necessary expenses in attempting to attend the performance, or whether she may also have compensatory damages for the contumely to which she was subjected, to her public humiliation in the company of her friends and her child. The Court of Appeals in People ex rel. Burnham v. Flynn, 189 N. Y. 180, 82 N. E. 169, said:

"The holder of a ticket which entitled him to a seat at a given time in a place of amusement, being refused admission, is entitled to recover the amount paid for the ticket, and undoubtedly such necessary expenses as were incurred in order to attend the performance."

But that case arose upon habeas corpus, and discussed the right of the managers of certain theaters to exclude the relator therefrom, thereby to protect themselves from public articles (written or to be written by him) reflecting upon their personal integrity and upon the patrons. The court further said:

"A dramatic critic, indulging in such intemperate language, may reasonably expect to arouse unpleasant antagonisms."

In Collister v. Hayman, 183 N. Y. 250, 76 N. E. 20, 1 L. R. A. (N. S.) 1188, 111 Am. St. Rep. 740, a ticket speculator sought to enjoin the proprietors of a theater from interfering with his business of selling tickets on the sidewalk, and the court wrote:

"Neither the license to the owner of the theater, nor the license to the ticket speculator, adds to or takes from the rights of the parties to the contract made when the proprietor sells a ticket. The rights of the purchaser and the duties of the proprietor are measured by the terms of the contract as in fact made. * * * The ticket is not the contract, although to some extent it is evidence thereof. The contract is implied from the circumstances, and is an agreement on the part of the proprietor, for the consideration mentioned, to admit the holder of the ticket upon presentation thereof to his theater at the date named, with the right to occupy the seat specified and to there witness the performance. * * * The main question presented for decision is whether the defendant had the right to make a contract with purchasers upon the conditions printed in the ticket."

The court then proceeded to discuss conditions which may appear on the fact of the ticket as to speculators, and holds that defendant should not be enjoined. In the case at bar, however, plaintiff purchased her unconditioned tickets at defendant's box office, and she was not personally obnoxious to the defendant or its patrons. Unless reasonable ground or legal cause is shown, defendant might not revoke the tickets. Collister v. Hayman, supra, does not contravene this proposition; for in that case Judge Vann writes:

"The case would be very different if, after the sale of a ticket containing no evidence of the restriction, an attempt were made to enforce it against a purchaser without notice."

So far as the authorities supra are applicable to the facts here, they tend in plaintiff's favor (though cited by respondent) as establishing her rights under an agreement or contract with defendant. To expel plaintiff actual force was unnecessary. To be boisterously told to "get out" after refusing to accept her tickets was sufficient for plaintiff to realize that, if she did not comply and leave, physical force was imminent, and she was thereby doubtless placed in bodily fear. With the conceded premise that plaintiff possessed an unconditional agreement, right, or privilege to attend defendant's theater at a specified time and location therein, but nevertheless and without just cause was denied admittance, harshly treated, insulted, and noisily driven away by defendant's employés, in the presence of other people, may justice be done if her only remedy is restoration of the cost of her tickets and

necessary expenses in attending a performance she was in the manner charged prohibited by defendant from witnessing? She brought no such action, but, on the contrary, in her complaint seeks further damages for injuries, recoverable if her complaint be true.

Wood v. Leadbitter, 13 Meeson & Welsby, 837 (1843), has long been cited as a leading case on this subject. Wood purchased a ticket for the inclosure attached to and surrounding the great stand on the Doncaster race course, of which Lord Eglintoun was steward. Being ordered to leave the inclosure, and refusing, plaintiff was removed therefrom. The court discussed with erudition whether Wood by his ticket or license derived an interest in land, whether a license under seal or by parol was revocable, whether the ticket gave Wood an easement, and sustained the trial court in its direction to the jury, to wit:

"Even assuming the ticket to have been sold to plaintiff under the sanction of Lord Eglintoun, still it was lawful for Lord Eglintoun, without returning the guinea, and without assigning any reason for what he did, to order the plaintiff to quit the inclosure, and that if the jury were satisfied that notice was given by Lord Eglintoun to plaintiff, requiring him to quit the ground, and that, before he was forcibly removed by defendant, a reasonable time had elapsed, during which he might conveniently have gone away, then plaintiff was not at the time of the removal on the place in question by the leave and license of Lord Eglintoun."

In Horney v. Nixon, 213 Pa. 20, 61 Atl. 1088, 1 L. R. A. (N. S.) 1184, 110 Am. St. Rep. 520, one Somers purchased eight reserved seats for a theatrical performance, one of which he sold to plaintiff. After this purchase the fire commissioner of Philadelphia directed the aisles of the theater to be widened. Owing to the carrying out of this direction, before the night of the performance a resale of tickets was had. When the eight tickets bought by Somers were presented, the holders thereof were courteously informed that other seats would be substituted. "The party, however, refused every proposition, and became noisy, to the annoyance of those witnessing the performance, which had commenced. They were told that they could not continue discussing the matter inside of the theater, and were directed to go outside, when, according to the testimony of the treasurer of the appellants, they were tendered back the money they had paid for their tickets. After having so declined every offer to give them other seats to witness the performance, they left the theater; and the plaintiff afterwards brought this action to recover the price of the tickets purchased by him and for the inconvenience and annoyance and mortification and indignity and humiliation suffered by him." The court held that on the complaint there could be no recovery in trespass, and then discussed many authorities reaching the following conclusion:

"In the light of these and other authorities, a theater ticket is to be regarded as a mere license, for the revocation of which, before the holder has actually been given his seat and has taken it, the only remedy is in assumpsit for the breach of the contract."

The facts in that case differ widely from the facts in the case at bar in many essential particulars. There the seats were obliged to be changed for the safety of the theater, whose proprietor was not at fault. He endeavored to satisfy the ticket holders who became obstreperous.

In the light of more modern adjudications, this arbitrary theory that a purchased ticket for an entertainment is a mere license, revocable at the whim or caprice of the proprietor of a place of public amusement, is no longer tenable. An unobjectionable holder of such a contract or agreement may not, without cause, be subjected to disgrace and contumely by the other party, and then left to recover only the price paid. If this be so, a great wrong would be without a civil remedy for the injury inflicted. I therefore do not assent to that proposition and believe I am sustained by reason and authority. "Where the holder of a ticket of admission to a place of public amusement is wrongfully ejected, the wrongdoer is liable for all consequential damages resulting from the unlawful ejection." Am. & Eng. Ency. of Law, vol. 28, p. 124.

In Smith v. Leo, 92 Hun, 242, 36 N. Y. Supp. 949, plaintiff sued for $2,500 damages because of his expulsion from a dancing school to which he had been admitted on payment of the entrance fee. He claimed to have been greatly injured in his good name, fame, and credit, and brought into public scandal, infamy, and disgrace with and among his associates and others. On an appeal, affirming a judgment in plaintiff's favor, the court, Merwin, J., writing, said:

"In substance it was alleged that defendant had willfully deprived the plaintiff of the enjoyment of a right that he had purchased of the defendant. The method of expulsion is not stated, but the word 'expel' ordinarily means to drive or force out or eject. So that defendant impliedly not only deprived the plaintiff of his right, but with indignity and disgrace put him out of the hall, where by his contract with defendant he had a right to be. The action is quite analogous to that of a passenger for illegal removal from a railroad train, and is, we think, maintainable under the allegations of the complaint. * * * The court in effect charged that the plaintiff might be compensated for the indignity and disgrace"—citing cases where persons were improperly ejected from railroad cars.

This authority, not reversed or distinguished, so far as I am aware, has been approved in Ray v. Cortland & Homer Traction Co., 19 App. Div. 530, 46 N. Y. Supp. 521, and Rhodes v. Sperry & Hutchinson Co., 120 App. Div. 469, 104 N. Y. Supp. 1102. See, also, Gillespie v. Brooklyn Heights R. R. Co., 178 N. Y. 347, 70 N. E. 857, 66 L. R. A. 618, 102 Am. St. Rep. 503, where it is held that damages resulting from insulting behavior of an employé are compensatory, not punitive or exemplary. The principles decided in Smith v. Leo, supra, it seems to me are in harmony with People ex rel. Burnham v. Flynn and Collister v. Hayman, supra, so far as plaintiff's rights are concerned, and therefore Purcell v. Daly, 19 Abb. N. C. 301, and Wood v. Leadbitter and Horney v. Nixon, supra, do not apply. The refusal to admit this plaintiff, as proved, was in substance and effect as much an ejection or removal from defendant's theater as though, after being seated in her place therein, she had been told to "get out" and had complied, pursuant to that hostile command. In the latter instance the situation might have been intensified, leading possibly to an aggravation of damages; but otherwise the grievance complained of is identical. The rule of damages applying alike to railroad corporations and to the proprietors of public places of amusement, whose employés violate

the rights of their patrons, it follows that the trial court erred in not permitting the jury to find what, if any, money compensation plaintiff was entitled to by reason of defendant's conduct in addition to the price paid for her tickets.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.