this right before the auctioneer had determined whose bid was the highest one, the right reserved was no protection at all to the city, for it would leave the city at the mercy of the auctioneer, and there was no provision which bound the city to execute an agreement to the lowest bidder. It was the commissioner who was to exercise this right, not the auctioneer, and it was the right of the commissioner to reject any and all bids, and that right, I think, continued for a reasonable time, until he could determine whether the interest of the city required that the bid should be rejected. He reserved this right of rejection to protect the city. It could only be exercised after the auctioneer had announced who was the highest bidder and the amount of the bid. This the auctioneer did, when it was settled that the defendant's bid of $15,-500 was the highest bid, and then it was for the commissioner to act, and, under the circumstances, I think he acted within a reasonable time, and the defendant, therefore, acquired the right to an agreement in accordance with its bid. The defendant then, continuing in possession of the privileges under the letter of the commissioner, was, I think, obligated to pay the compensation reserved by the former agreement, and therefore the plaintiff was entitled to judgment.

The case of Brown v. City of New York, 57 Misc. Rep. 433, 108 N. Y. Supp. 555, is not in point. In that case it was the comptroller who had reserved the right to reject the bid after the property had been knocked down to the plaintiff, and who accepted from the plaintiff one quarter's rent of the premises. This was, of course, an acceptance of the bid. In this case the defendant deposited with the department a sum of money as security for his executing an agreement in accordance with his bid as accepted. The receipt of that deposit was not, as I view it, an acceptance of the bid.

The judgment should, I think, be reversed, and judgment directed for the plaintiff.

SCOTT, J., concurs.

---

### WOOLCOTT v. SHUBERT et al.

(Supreme Court, Appellate Division, First Department. July 9, 1915.)

1. INJUNCTION ⊚⇒94—GROUNDS—EXISTENCE OF STATUTORY REMEDY.

Civil Rights Law (Laws 1895, c. 1042; Consol. Laws, c. 6, as amended by Laws 1913, c. 265) § 40, declares that all persons are entitled to full and equal accommodations and privileges of any place of public amusement, including theaters, and that no proprietor, etc., of any such place shall deny such accommodations and privileges, and section 41 provides a penalty for violation of section 40, recoverable by the person aggrieved thereby, and declares the offense a misdemeanor, subject to fine and imprisonment, or both. Plaintiff, a newspaper writer and dramatic critic, was excluded from theaters controlled by defendants, who also threatened his future exclusion. *Held*, that whatever rights plaintiff had were based on the statute, there being no such right at common law, and that, assuming that the statute expressly secured to all full and equal accommodations and privileges at theaters, and that the exclusion of plaintiff

violated the statute, the statutory remedy was exclusive, so that injunction would not lie.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 165; Dec. Dig. ☜94.]

2. INJUNCTION ☜94—GROUNDS—MULTIPLICITY OF SUITS.

Nor would injunction lie on the ground that it would prevent a multiplicity of suits, where it was not alleged that even one action for a penalty had been tried or commenced.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 165; Dec. Dig. ☜94.]

3. INJUNCTION ☜94—GROUNDS—INADEQUACY OF REMEDY AT LAW.

Nor would injunction lie on the ground that the exclusive remedy provided by statutes was inadequate, since such remedy was entirely adequate.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 165; Dec. Dig. ☜94.]

Dowling, J., dissenting.

Appeal from Special Term, New York County.

Action by Alexander Woolcott against Lee Shubert and others. From an order granting an injunction pendente lite, defendants appeal. Order (90 Misc. Rep. 474, 154 N. Y. Supp. 754) reversed and motion denied.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Charles H. Tuttle, of New York City (William Klein, of New York City, on the brief), for appellants.

Alfred A. Cook, of New York City, for respondent.

SCOTT, J. The plaintiff is a newspaper writer and dramatic critic. The defendants are engaged in the business of conducting theaters and other places of amusement in the city of New York and elsewhere. Owing to the unfavorable character of some of the criticisms written and printed by plaintiff concerning certain plays produced by defendants, the latter have refused to permit him to enter any theater controlled by them, and threaten so to prevent him in the future. The reason given by defendants for so excluding plaintiff is that, as they consider, his articles were not fair reviews or criticisms of the plays produced or of the productions or of the acting, but were biased and improper and inaccurate. Plaintiff denies bias, and asserts in effect that his criticisms expressed his honest opinions and were fair and impartial. Much of the voluminous appeal book is taken up with matter designed to bear upon this issue, but, in the view we take of the case, the question thus raised is immaterial.

Whatever rights the plaintiff has for redress against defendants' acts must rest upon sections 40 and 41 of the Civil Rights Law. Section 40 of that law as it stands at present (chapter 265, Laws 1913) differs widely in phraseology, and perhaps in effect and intent, from the section which preceded it (chapter 1042, Laws 1895) and under which nearly all of the so-called civil rights cases in this state have been decided. Sections 40 and 41 of the present act read as follows:

"Sec. 40. Equal Rights in Places of Public Accommodation, Resort or Amusement.—All persons within the jurisdiction of this state shall be enti-

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tled to the full and equal accommodations, advantages and privileges of any place of public accommodation, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner, lessee, proprietor, manager, superintendent, agent or employé of any such place, shall directly or indirectly refuse, withhold from or deny to any person any of the accommodations, advantages or privileges thereof, or directly or indirectly publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed or color, or that the patronage or custom thereat, of any person belonging to or purporting to be of any particular race, creed or color is unwelcome, objectionable or not acceptable, desired or solicited. The production of any such written or printed communication, notice or advertisement, purporting to relate to any such place and to be made by any person being the owner, lessee, proprietor, superintendent or manager thereof, shall be presumptive evidence in any civil or criminal action that the same was authorized by such person. A place of public accommodation, resort or amusement within the meaning of this article, shall be deemed to include any inn, tavern or hotel, whether conducted for the entertainment of transient guests, or for the accommodation of those seeking health, recreation or rest, any restaurant, eating house, public conveyance on land or water, bathhouse, barber shop, theater and music hall. Nothing herein contained shall be construed to prohibit the mailing of a private communication in writing sent in response to a specific written inquiry.

"Sec. 41. Penalty for Violation.—Any person who shall violate any of the provisions of the foregoing section, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby or by any resident of this state, to whom such person shall assign his cause of action, in any court of competent jurisdiction in the county in which the plaintiff or the defendant shall reside; and shall, also, for every such offense be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than one hundred dollars nor. more than five hundred dollars, or shall be imprisoned not less than thirty days nor more than ninety days, or both such fine and imprisonment."

The former act was generally construed as forbidding only discrimination founded on racial considerations. It is the claim of the plaintiff that the present act is much wider in its scope and purport, and forbids all discrimination by those controlling places of public resort, confining the prohibition or discrimination as to race, creed, or color to the communications, notices, and advertisements mentioned in section 40. Without passing at present upon this contention we shall assume for the purpose of this appeal, but without deciding, that the act now in force expressly secures to all persons within the jurisdiction of the state the full and equal accommodations, advantages, and privileges of theaters, as well as other places of resort and amusement, and that in discriminating against plaintiff the defendants violated the statute.

[1] The question remains whether, admitting all that plaintiff claims as to the scope and effect of the statute, he is entitled to resort to equity for relief by way of injunction. Whatever right plaintiff has to claim admittance to defendants' theaters against their will must be based upon the statute, for at common law he would have had no such right. Collister v. Hayman, 183 N. Y. 250, 76 N. E. 20, 1 L. R. A. (N. S.) 1188, 111 Am. St. Rep. 740, 5 Ann. Cas. 344; People ex

rel. Burnham v. Flynn, 189 N. Y. 180, 82 N. E. 169, 12 Ann. Cas. 420; Aaron v. Ward, 203 N. Y. 351–355, 96 N. E. 736, 38 L. R. A. (N. S.) 204. Section 41 of the act above referred to imposes severe punishment upon any person who may violate it, both by way of penalty to be recovered by the person aggrieved in a civil action, as well as by conviction for a misdemeanor. The general rule is that where a statute creates a right and prescribes a remedy for its violation, that remedy is exclusive, and neither an action for damages nor for an injunction can be maintained. In Almy v. Harris, 5 Johns. 175, Harris sued Almy in the court below for damages for disturbing him in the enjoyment of a ferry, and had judgment. The Supreme Court reversed, because whatever right Harris had to be left undisturbed was derived from a statute which also provided a penalty. The court said:

"If Harris had possessed a right, at the common law, to the exclusive enjoyment of this ferry, then the statute giving a remedy in the affirmative, without a negative expressed or implied, for a matter authorized by the common law, he might, notwithstanding the statute, have his remedy by action at the common law. 1 Comyns' Dig. Action on Statute C. But Harris had no exclusive right at the common law, nor any right but what he derived from the statute; consequently he can have no right, since the statute, but those it gives; and his remedy therefore must be under the statute, and the penalty only can be recovered."

The same rule thus applied to an action for damages on the case must equally apply to an action for an injunction, for the right to an injunction depends upon the necessity for preventing a legal injury from which damages may result, and if plaintiff can establish no case for claiming damages, he can show no ground for an injunction. "In such a situation it goes without saying that a court of equity cannot be invoked to aid a plaintiff unless some other ground for its interference be shown." Marlin Firearms Co. v. Schields, 171 N. Y. 384–391, 64 N. E. 163, 165 (59 L. R. A. 310).

[2] The plaintiff, while not disputing the general rule above stated, insists that this case is outside the rule for two reasons. The first is that equity will interfere by injunction to prevent a multiplicity of suits. By this we understand to be meant a multiplicity of suits for the penalties prescribed by the statute. The difficulty with that suggestion is that it is not alleged that even one action for a penalty has been tried or even begun. In Troy & Boston R. R. Co. v. Boston, Hoosac Tunnel & Western Railway Co., 86 N. Y. 107–128, the Court of Appeals said:

"The complaint and proof is of a trespass, but there is neither allegation nor proof * * * showing the injury to be irreparable. There is no allegation showing multiplicity of suits pending or expected; and, while there is a finding by the court that a remedy can only be partially obtained by a great multiplicity of actions at law, there is no evidence that any such action has been tried or even brought. This the general rule requires, and we find nothing in the case to make it an exception. Against whom will the suits be required? If against the defendant, it will be time enough to urge that plea when by one action the plaintiff's legal right shall have been established, and its adversary still offends. For aught that now appears, one action at law will suffice."

[3] The second reason urged by plaintiff why he should be awarded equitable relief is that the remedy provided by the statute is inade-

quate, and he cites to us several well-known. cases to the effect that the general rule that the remedy provided by statute is exclusive is only applicable when the remedy so provided is adequate. Dudley v. Mayhew, 3 N. Y. 9; Cook v. Whipple, 55 N. Y. 150, 14 Am. Rep. 202; People ex rel. Hatzel v. Hall, 80 N. Y. 117; McLean v. Myers, 134 N. Y. 480, 32 N. E. 63. The answer to this objection is that, in our opinion, the statutory remedy is entirely adequate. Our conclusion is that the order appealed from must be reversed, with $10 costs and disbursements, and the motion for an injunction pendente lite denied, with $10 costs.

INGRAHAM, P. J., and CLARKE and HOTCHKISS, JJ., concur.

DOWLING, J. (dissenting). The defendants stand upon what they deem is their right to exclude the plaintiff from the theaters controlled by them when he avowedly comes, as a representative of The New York Times, to criticize their productions. This they deem doing business in their theaters, and they claim that theirs alone is the privilege of transacting business therein, if they choose to assert it. But they express their willingness to admit him to view their shows if he can satisfy them that he will transact his business, so far as their plays are concerned, fairly and without injury to their investments, and they also profess their readiness to admit him to their theaters if he goes there simply for personal amusement and in no other capacity than as one of the general public. This position, it seems to me, is untenable. Plaintiff does not do business in defendants' theaters, in any sense of the term. His work is done after he has left the theater, and the only difference between his subsequent comments upon the play and those of any other member of the audience is that he speaks with more authority, because of greater experience and special knowledge, and addresses a larger section of the public. But if defendants can exclude plaintiff unless he promises to make his criticisms match their views of their own enterprises, they can as well refuse admission to any person who voices a poor opinion of any of their manifold presentations. Whatever suspicion they may have as to plaintiff's hostility toward them cannot be substantiated by the articles in evidence, which simply show that plaintiff praised the plays he thought were good and commented unfavorably on those he deemed failures or trivialities, in the expression of which views he seems always to have had much companionship.

The decision of this appeal must turn upon the question whether defendants have the unqualified right to decide who shall be admitted to witness their productions and whether, if such right is qualified, the power to exclude extends only to cases in which the defendants have made general rules applicable to all the public alike. The trend of the decisions establishes that at common law the proprietor of a theater had a right to decide who should be admitted to witness the plays he saw fit to produce, that his enterprise was a private one, and that he was under no obligation to entertain the public at large, unless he saw fit to do so, but could discriminate and receive whom

he pleased. People ex rel. Burnham v. Flynn, 189 N. Y. 180, 82 N.
E 169, 12 Ann. Cas. 420; Aaron v. Ward, 203 N. Y. 351, 96 N. E.
736, 38 L. R. A. (N. S.) 204; Collister v. Hayman, 183 N. Y. 250,
76 N. E. 20, 1 L. R. A. (N. S.) 1188, 111 Am. St. Rep. 740, 5 Ann.
Cas. 344. So it was the general rule of law that a ticket of admis-
sion to a place of public amusement was but a license and revocable
(Aaron v. Ward, supra; Marrone v. Washington Jockey Club, 227
U. S. 633, 33 Sup. Ct. 401, 57 L. Ed. 679, 43 L. R. A. [N. S.] 961),
and the refusal to sell a ticket of admission would not create a cause
of action against the proprietor (Luxenberg v. Keith & Proctor Amuse-
ment Co., 64 Misc. Rep. 69, 117 N. Y. Supp. 979). Even the original
Civil Rights Act (chapter 1042, Laws of 1895) contemplated and for-
bade only discriminations on account of race, creed, or color. Gran-
nan v. Westchester Racing Association, 153 N. Y. 449, 47 N. E. 896;
Aaron v. Ward, supra; Joyner v. Moore-Wiggins Co., 152 App. Div.
266, 136 N. Y. Supp. 578, affirmed 211 N. Y. 522, 105 N. E. 1088.
But the amendment to that act (chapter 265, Laws 1913) radically
changed its language and scope. The original act read as follows:

"Section 1. That all persons within the jurisdiction of this state shall be
entitled to the full and equal accommodations, advantages, facilities and
privileges of inns, restaurants, hotels, eating houses, bathhouses, barber
shops, theaters, music halls, public conveyances on land and water, and all
other places of public accommodation or amusement, subject only to the con-
ditions and limitations established by law and applicable alike to all citizens.
     "Sec. 2. That any person who shall violate any of the provisions of the
foregoing section by denying to any citizens, except for reasons applicable
alike to all citizens of every race, creed or color, and regardless of race,
creed and color, the full enjoyment of any of the accommodations, advantages,
facilities or privileges in said section enumerated, or by aiding or inciting such
denial, shall for every such offense forfeit and pay a sum not less than one
hundred dollars nor more than five hundred dollars to the person aggrieved
thereby, to be recovered in any court of competent jurisdiction in the county
where said offense was committed; and shall, also, for every such offense be
deemed guilty of a misdemeanor, and upon conviction thereof shall be fined
not less than one hundred dollars nor more than five hundred dollars, or
shall be imprisoned not less than thirty days, nor more than ninety days, or
both such fine and imprisonment."

Section 3 forbade the disqualification of any person from service on
a grand or petit jury on account of race, creed, or color. Sections 1
and 2 became sections 40 and 41 of the Civil Rights Law (chapter 14,
Laws 1909). The amendment of 1913 left the statute in the form in
which it has been quoted in the opinion of Mr. Justice SCOTT herein.
It will be seen that whereas sections 2 and 41 in their original form
limited the violations which were penalized to those wherein the dis-
crimination was because of race, creed, or color, the amendment limits
the application of these words to communications, notices, or advertise-
ments wherein the accommodations, advantages, and privileges of a
place of public accommodation, resort, or amusement were stated to be
refused, withheld from, or denied to any person on account of race,
creed, or color, or stating that the patronage of any person was not
desired thereat because of his race, creed, or color. The first sentence,
conferring equal rights in the public places specified (which are defined
in the fourth sentence of the section), is complete in itself, and under

the new form of section 41 is punishable by fine or imprisonment, or both. It is detached from, and unassociated with, the second sentence, and the qualifying words "race, creed or color" can, it seems to me, be in no way referable thereto. This being so, the refusal to admit plaintiff to defendant's theaters for reasons solely applicable to him and not affecting the general public was a violation of the statute. Is the plaintiff then relegated to his right to enforce the penalty provided by the statute? I think he would be, if the statutory remedy is adequate to redress his wrong. The rule was laid down in Dudley v. Mayhew, 3 N. Y. 9:

"The principle that where a statute confers a right, and prescribes adequate means for protecting it, the proprietor is confined to the statutory remedy, is conformable to the manifest intention of the Legislature in such cases, and has therefore been properly settled in the courts of England and in this country."

See, also, Cook v. Whipple, 55 N. Y. 150, 14 Am. Rep. 202; People ex rel. Hatzel v. Hall, 80 N. Y. 117; McLean v. Myers, 134 N. Y. 480, 32 N. E. 63. It seems clear that the statutory penalty is inadequate to protect the rights conferred upon plaintiff by the statute. The defendants, individually and collectively, are most important personages in the theatrical world. As owners, lessees, managers, and producers, their activities are so widespread that if plaintiff is unable to enter their theaters and view the performances therein as a basis for his subsequent criticisms, his usefulness as a critic and his ability to earn his livelihood by following such avocation must be seriously impaired, if not destroyed. It is not conceivable that, even if he could continue in the employ of his paper as a theatrical critic, while only able to witness and review half of the plays produced in New York City, his salary would remain the same or his standing as a writer remain unimpaired. He shows special damage, for the violation of his statutory right, beyond the compensating power of the statutory penalty. The only remedy that he can have against the continued refusal by defendants to admit him to all the theaters owned or controlled by them (which they have frankly admitted is their settled policy) is by injunction. I therefore am in favor of the affirmance of the order appealed from.