ZENA DANIELS, an Infant, by Her Guardian ad Litem, FANNY DANIELS, Plaintiff, *v.* FIRM AMUSEMENT CORPORATION, Defendant.

Municipal Court of New York, Borough of Manhattan, Fourth District, November 25, 1935.

*Lewis Rauch,* for the plaintiff.

*Leopold Friedman,* for the defendant.

LEWIS (DAVID C.), J.   With no thought of detail, the court briefly refers to the salient facts featuring the plaintiff's case.

The plaintiff attended at the defendant's theatre.   Before entering, she stood in line.   An unnamed individual was on the same line.   His behavior and instability plainly suggested intoxication. He was admitted in advance of the plaintiff.

Upon entering, seats were not available, and the plaintiff had to wait in the lobby.   The unknown person was again observed in this lobby, continuing to exhibit additional familiar symptoms of apparent inebriety.   An usher was seen to approach him; but what he said is neither known nor inferred.   Later the stranger proceeded up the steps leading to the balcony, and in a short time was seen trying to make his way down the same steps.

The plaintiff had been standing in close proximity to the stairs. Without warning, the stranger retched and spewed out, and the plaintiff found herself an unenviable target.

The plaintiff charged the defendant with responsibility for this invasion of her person.   A jury awarded her a verdict.   The defendant challenges the legal right of the plaintiff to hold the defendant.

If the court remembers its charge correctly, it explained to the jury the duty resting upon the proprietor of the theatre, and the corresponding rights of the plaintiff, the patron.   It reminded the jury that the liberal customs of the greatest metropolitan city set

standards of human conduct which must be considered in conjunction with the other established circumstances in testing the liability of the defendant for any breach of duty. And it left it to the jury to determine whether or not the alleged mishap was such a happening or contingency which the defendant, in the exercise of due foresight, should have anticipated. The jury resolved the questions of fact in favor of the plaintiff. The motion to set aside the verdict, therefore, must look to the law for support.

The proprietor of a theatre is a sovereign within the precincts or premises of his domain. Except as restricted by the Civil Rights Law, he may arbitrarily exclude, and he may also to a great extent evict, any person or patron.

" At the common law a theatre, while affected by a public interest which justified licensing under the police power or for the purpose of revenue, is in no sense public property or a public enterprise. It is not governed by the rules which relate to common carriers or other public utilities. The proprietor does not derive from the state the franchise to initiate and conduct it. His right to and control of it is the same as that of any private citizen in his property and affairs. He has the right to decide who shall be admitted or excluded. His rights at the common law, in the respect of controlling the property, entertainments and audience, have been too recently determined by us to be now questionable. (*People ex rel. Burnham* v. *Flynn*, 189 N. Y. 180; *Collister* v. *Hayman*, 183 N. Y. 250; *Aaron* v. *Ward*, 203 N. Y. 351.) " (*Woollcott* v. *Shubert*, 217 N. Y. 212.)

" These cases illustrate the absolute control that the proprietor of a theatre exercises over the house and the audience. He derives from the state no authority to carry on his business, and may conduct the same precisely as any other private citizen may transact his own affairs." (*People ex rel. Burnham* v. *Flynn, supra*, at p. 185.)

Possessed of such absolute authority, how, when and for whose protection shall he exercise it?

Here, like in the uncountable other instances of human behavior or conduct, the duty to act awaits the command of common care, prudence or foresight. It is necessarily born of circumstances. Plain and imminent danger always sounds the call for action. But I do not believe that in the case of a place of public amusement, particularly a theatre, the danger must be patent before there can be any obligation on the part of the proprietor to act.

Counsel for the defendant pins his reliance upon those cases where an intoxicated individual was allowed to remain on a common carrier. It seems to me that one enters a street car primarily for transportation; one enters the theatre primarily for enjoyment.

And in many other ways the rights and responsibility are far from identical in both instances.

" It is insisted, however, that there is a distinction between common carriers and innkeepers, who are obliged to serve all persons who seek accommodation from them, and the keepers of public places of amusement or resort, such as the bathhouse of the defendant, theatres and the like. That the distinction exists is undeniable, and in the absence of legislation the keeper of such an establishment may discriminate and serve whom he pleases. Therefore, in such a case a refusal would give no cause of action. So, also, it is the general rule of law that a ticket for admission to a place of public amusement is but a license and revocable." (*Aaron* v. *Ward*, 203 N. Y. 351, at p. 355.)

The theatre proprietors have taken appropriate steps to protect their patrons from exorbitant prices. Are they to be excused from taking appropriate precautions to protect the security and comfort of their patrons?

" The law does not prevent the proprietor of a theatre from making reasonable regulations for the conduct of his business and imposing such reasonable conditions upon the purchasers of tickets as in his judgment will best serve the interests of that business. * * *

" Unlike a carrier of passengers, for instance, with a franchise from the state and hence under obligation to transport anyone who applies and to continue the business year in and out, the proprietors of a theatre can open and close their place at will and no one can make lawful complaint. They can charge what they choose for admission to their theatre. They can limit the number admitted. They can refuse to sell tickets and collect the price of admission at the door. They can preserve order and enforce quiet while the performance is going on. They can make it a part of the contract and a condition of admission by giving due notice and printing the condition in the ticket that no one shall be admitted under twenty-one years of age or that men only or women only shall be admitted, or that a woman cannot enter unless she is accompanied by a male escort and the like. The proprietors in the control of their business may regulate the terms of admission in any reasonable way." (*Collister* v. *Hayman*, 183 N. Y. 254, 255.)

" She might claim to be protected against unintentional invasion by conduct involving in the thought of reasonable men, an unreasonable hazard that such invasion would ensue. These, from the point of view of the law, were the bounds of her immunity, with perhaps some rare exceptions, survivals for the most part of ancient forms of liability, where conduct is held to be at the peril of the

actor." (*Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339, at p. 341.)

Thus the solution of the case looks to certain facts.

Was the man intoxicated? Was the defendant chargeable with notice of inebriety? Did his condition call for attention (either his exclusion, eviction or other action) by the defendant? Were the subsequent events within the realm of anticipated consequences?

The last query is the ticklish one. It is the test of liability. For unless the subsequent occurrences fall within the field of reasonably contemplated hazards and happenings, the defendant was not obligated to foresee or forestall them.

The jury apparently found in the affirmative on every proposition. I doubt whether their holding is to be disturbed. Certainly not as to the first three.

The practical conduct of the modern gentleman may not rival the romantic chivalry of the errant knight, but the average gentleman usually recognizes his obligations to a lady. The rules of public etiquette and common courtesy assure to the fair sex a due, if not a full, regard by man. The enfranchisement of women has not worked a disfranchisement of common courtesy.

A proprietor of a theatre plays host. His feminine patrons (his guests) have the right to expect that the proprietor will administer his theatre in keeping with these commonly accepted standards.

The jury decided that the proprietor was put on his guard. That he should have acted. That he did nothing to ward off the occurrences. What, then, about the consequences?

There is negligence only where no care is exercised to avert a risk to others which reasonably should be apprehended. " 'The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension.' " (*Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339, at p. 344.)

" It was not necessary that the defendant should have had notice of the *particular method in which an accident would occur, if the possibility of an accident was clear to the ordinary, prudent eye.*" (Italics mine.) (*Palsgraf* v. *Long Island R. R. Co.*, *supra*, p. 344.)

Principles and precedents can only constitute the guide for judicial deliberation in this province of pragmatism.

The court cannot undertake to prescribe the exact conduct for every future contingency. It can only undertake to judge past conduct in connection with past events.

The jury determined that the proof brought this case within the precincts of a reasonably anticipated risk and accident. That their holding was unwarranted cannot be arbitrarily decided by

abstract legal maxims. The common experiences of men are the precedent by which to test this holding. On this subject no law court speaks the last word. The verdict of the jury may be accepted as a valid edict.

One might observe that while ordinarily each individual can be the judge of his capacity, past performances may make us doubt whether one who is, in the common vernacular, " tipsy " should be expected to have everything under control. Here one may say, " Coming events cast their shadows in advance."

Motion denied.