HARRY LEVINE et al., Plaintiffs, *v.* BROOKLYN NATIONAL LEAGUE BASEBALL CLUB, INC., Defendant.*

Supreme Court, Kings County, June 25, 1942.

*Bannigan & McNamara* for plaintiffs.

*Willkie, Owen, Otis, Farr & Gallagher* for defendant.

KLEINFELD, J. Defendant owns and operates a baseball team known as the "Dodgers." The home games of the team are played at Ebbet's field and admission is by tickets issued and sold by the Club. Plaintiffs, who are licensed to sell tickets to

* See, also, *Mandel* v. *Brooklyn Nat. League Baseball Club* (179 Misc. Rep. 27).

places of amusement, operate ticket agencies located directly across the street from Ebbet's field. They seek a temporary injunction restraining the defendant from denying admission to individuals who have purchased tickets to the ball park from them. As a basis upon which to justify the granting of such relief, plaintiffs urge that the defendant caused to be published in various newspapers a notice to the effect that anyone presenting a ticket of admission at defendant's baseball park, which had been purchased from anyone charging more than the face value thereof, would be denied admission, that pursuant to such publication the defendant did deny admission to all individuals who had purchased their tickets from the plaintiffs. As a result of the defendant's action, plaintiffs allege that in some instances they have had to refund to purchasers the amount of money they paid for tickets and in other cases the defendant refunded the face amount of the tickets. Plaintiffs allege further that the aforementioned publications were intended to and did bring about a diminution of the business carried on by them.

In answer to these charges defendant admits that on and prior to June 15, 1942, it published notice of its intention to make refusal of tickets and also delivered such notice to ticket speculators, including the plaintiffs. Defendant also admits that beginning with the game played at Ebbet's field on June 15, 1942, it has refused to honor all tickets purchased from brokers or speculators. It alleges that it has offered to refund and has refunded the admission price of any such tickets offered for refund before the time set for the beginning of the game on the date for which tickets have been issued. In addition to the foregoing, defendant asserts that for certain holidays, Sunday double-headers and night games, the supply of box and reserve seats has frequently been insufficient to meet the demand. On such occasions, fans seeking tickets from the Club after the Club's supply of tickets has been exhausted are incensed to find that although they cannot get tickets at the Club's box office, tickets can be obtained, but only at a premium, at the booths of the speculators across the street from the park. Defendant has learned that certain speculators in some instances have charged exorbitant prices — whatever the traffic would bear—in violation of both State and Federal regulations. This situation, the defendant avers, has provoked intense criticism by the fans and the press and has endangered the good will and business of the defendant. Defendant states further

that the fan who has been charged an exorbitant price by the speculator on the day of an all-important game is not likely to come back for the less important games when tickets are abundant at the box office; that the fan's patronage on that day is just as valuable to the club as on any "sell-out" day. To eliminate or reduce the evils adverted to above, the defendant has adopted the procedure which is now the subject of this application.

At the outset, I might point out that it is my opinion that the legitimate ticket broker has a definite place in our economic life today. As was stated in *People* v. *Weller* (237 N. Y. 316, 320): "The business of reselling tickets of admission to places of public amusement has always been regarded as a lawful business which serves the convenience and promotes the comfort of persons who desire to purchase at convenient times and places * * .* ."

By their licenses, however, ticket brokers do not obtain any vested right in the business of buying or selling tickets for any particular amusement. The statute under which plaintiffs obtained their licenses, *i. e.*, article X-B of the General Business Law, vests no franchise in licensees. It merely regulates the ticket-selling business and provides that no person may engage in the business of reselling tickets without a license. It nowhere states that a licensee has a vested right to sell particular tickets. This was clearly pointed out in *Collister* v. *Hayman* (183 N. Y. 250, 253): "The license of a 'ticket speculator,' so far as it has any validity, simply authorizes him to conduct his business on the sidewalk, within the limits prescribed. (City charter, §§ 50, 51, 1472, 1473.) Neither the license to the owner of the theatre nor the license to the ticket speculator adds to or takes from the rights of the parties to the contract made when the proprietor sells a ticket."

The evils of ticket speculation, however, have been well known and recognized by our courts and also by the Legislature of this State for some years past. The case of *Purcell* v. *Daly* (19 Abb. N. C. 301) indicates that as early as the year 1885 these abuses were also the subject of litigation. In that case the proprietor of Daly's Theatre refused to honor a ticket purchased from a speculator in theatre tickets who had been duly licensed by the proper authorities. There, as in the present case, notice was given that tickets bought from speculators would not be honored at the door of the theatre. In dismissing plaintiff's complaint to recover the purchase price of the tickets, the court stated (p. 303): "This being so, the proprietor of a

theatre has a perfect right to say who he will or will not admit to his theatre, and should any one apply at the boxoffice of a theatre and desire to purchase tickets of admission and be refused, there can be no question that he would have no cause of action against the proprietor of the theatre for such refusal. And in the same way, if tickets are sold to a person the proprietor may still refuse admission, in which case the proprietor would be compelled to refund only the price paid for the tickets of admission, together with such other expense as the party might have been put to, but which expense must be directly connected with the issuing of the ticket of admission. For he could not accept money for the right of admission to his theatre and then, upon refusing that admission, seek to retain possession of the price paid for the privilege. A theatre ticket is simply a license to the party presenting the same to witness a peformance to be given at a certain time, and being a license personal in its character can be revoked. (*Mendenhall* v. *Klinck*, 51 N. Y. 246; *Wood* v. *Leadbitter*, 13 Mees. & W. 838.)''

Referring to these same evils, the Court of Appeals in *Collister* v. *Hayman*, (*supra*), stated, at page 254: ''A ticket speculator is one who sells at an advance over the price charged by the management. Speculation of this kind frequently leads to abuse, especially when the theater is full and but few tickets are left, so that extortionate prices may be exacted.''

And in the later case of *Kelly-Sullivan, Inc.*, v. *Moss* (174 Misc. Rep. 1098) the court said: ''Not only has the Legislature pointed to the evils but the courts have furnished bills of particulars to them. (*People* v. *Weller, supra*, p. 331; *Tyson* v. *Banton, supra*, p. 450 [273 U. S. 418, 450]; *Collister* v. *Hayman*, 183 N. Y. 250, 254.)''

It is established law that a ticket to a place of amusement does not create a right *in rem*. It is merely a revocable license. (*Marrone* v. *Washington Jockey Club*, 227 U. S. 633, 636; *Collister* v. *Hayman, supra*, p. 253; *People ex rel. Burnham* v. *Flynn*, 189 N. Y. 180, 185.) In the case at bar each ticket sold by the defendant bears on its face the following legend: ''Management reserves the right to revoke license granted by this ticket by refunding purchase price.''

It thus appears that the defendant at all times reserved the right to refuse to honor the tickets in question and in consequence merely a revocable license was issued to a prospective patron. Subsequent to June 16, 1942, each ticket sold by the club contains the following inscription: ''Notice and Agreement: This ticket is a personal license, not transferable, and may not be resold or offered for resale at a premium.''

The right of the defendant to make the conditions referred to above and to refuse all tickets transferred in violation thereof has been expressly upheld. (*Collister* v. *Hayman, supra; Harris* v. *Jack's Theatre Ticket Service, Inc.,* 139 Misc. Rep. 111.) In the *Collister* case the court said (pp. 254–256): "The law does not prevent the proprietor of a theatre from making reasonable regulations for the conduct of his business and imposing such reasonable conditions upon the purchasers of tickets as in his judgment will best serve the interests of that business. * * * A regulation of the proprietor, which tends to protect his patrons from extortionate prices is reasonable and he has the right to make it a part of the contract and a condition of the sale. Unless he can control the matter by contract and by conditions appearing upon the face of the ticket which is evidence of the contract, he may not be able to control it at all, but must leave his patrons to the mercy of speculators, such as the plaintiff, who, as he alleges, was accustomed to make at least $4,000 a year from his business. That amount, of course, came out of patrons of the theatre and if other ticket speculators carrying on the same business at various theatres in the city of New York are equally successful, the additional expense to theatre-goers must be very large. * * *

"The proprietors in the control of their business may regulate the terms of admission in any reasonable way. If those terms are not satisfactory no one is obliged to buy a ticket or make the contract. * * * The purchaser is warned in advance of what he is buying. He has notice before he buys of the condition which the proprietors saw fit to make a part of the contract. He acts with his eyes open and if he does not like the condition he need not buy, but if he buys he impliedly assents to the condition which controls not only himself, but any purchaser from him."

In the absence of any discrimination within the purview of the Civil Rights Law, I am of the opinion, in the light of the foregoing authorities, that the defendant cannot be enjoined from refusing to accept tickets purchased from the plaintiffs. Furthermore, I think plaintiffs have an adequate remedy at law to recover the price paid for any tickets which they may have purchased under the conditions alluded to above. (*Purcell* v. *Daly, supra; Luxenberg* v. *Keith & Proctor Amusement Co.,* 64 Misc. Rep. 69; *Collister* v. *Hayman, supra.*)

The drastic remedy of temporary injunction is granted only where the right to it is clear and undisputed. No such case is presented by the plaintiffs  The motion is, therefore, denied.