THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* NORWEGIAN UNDERWRITERS, a Lloyds Association, and Others, Defendants.*

Supreme Court, Albany County, January 29, 1931.

---

* See, also, 228 App. Div. 737.

Hamilton Ward, Attorney-General [Amos D. Moscrip, Deputy Attorney-General, of counsel], for the plaintiff.

Bonynge & Barker [Robert J. Sykes of counsel], for the defendants.

STALEY, J. This is an action brought by the Attorney-General of the State in which the demand for judgment, as stated in the amended complaint is as follows: " Wherefore, the plaintiffs herein demand judgment that whatever rights, privileges or franchises the said New York Central Lloyds or/and Norwegian Underwriters or/and the defendants named herein ever have had or claimed to have or may ever claim to have by virtue of said Article X of the Insurance Law, being Chapter 638 of the Laws of 1910, and/or by reason of the certificate of the Superintendent of Insurance under date of December 31st, 1910, and/or by reason or virtue of any other claim whatever, be forever forfeited, vacated and annulled; that the said defendants be adjudged unlawfully claiming to hold said alleged, claimed, non-existent, defunct and expired rights, privileges or franchises of whatever nature; that said alleged, claimed, non-existent, defunct and expired rights, privileges or franchises of whatever nature be surrendered to the plaintiffs herein; that the said defendants be forever ousted and excluded from holding, exercising or claiming such alleged, claimed, non-existent, defunct and expired rights, privileges or franchises, of whatever nature, or any of them; that the said defendants be perpetually enjoined from holding, exercising or claiming said alleged, claimed, non-existent, defunct and expired rights, privileges or franchises of whatever nature, or any of them; and for such other and further relief in the premises as is just and proper, together with the costs of this action."

It appears from the agreed statement of facts that the Norwegian Underwriters is an unincorporated association formed for the purpose of doing an insurance business on the Lloyds plan. It was formed in April, 1892, under the name of the " New York Central Lloyds."

In 1910 it complied with chapter 638 of the laws of that year and received a certificate or license to do business from the Superintendent of Insurance, and that certificate stands unrevoked.

During the period from 1910 to 1919 there were various changes in the organization and personnel. As a result of the World War, the association was able to conduct a profitable fire and marine insurance business, carrying risks at times aggregating $70,000,000.

After the war the business fell off and the affairs of the association were wound up. The organization, however, was not abandoned. Five underwriters continued in the association and from 1919 to 1925 one fire and one marine policy were kept in force.

In 1925 another change was made in the organization and personnel. Papers indicating the change were filed with the Superintendent of Insurance. Here the matter rested until the commencement of this action.

The claim of the Attorney-General is that the inactivity of the association in conducting its insurance business is a ground for the forfeiture of its " franchise." No charge of wrongdoing is made; nor is there any claim that the association has engaged in any practices not conformable to the ethics of the insurance business. On the contrary, the facts appearing show that the organization has carried on an extensive insurance business, has paid its losses and has been able to adjust its affairs in a way that, for aught that appears, is entirely satisfactory. No complaint or charges are made by the Insurance Department.

The claim of the Attorney-General appears to be that Lloyds associations, organized before the Insurance Law of 1892 (Laws of 1892, chap. 690) went into effect, have been and may be subject to great abuses, as they are exempt from many of the regulating provisions applicable to insurance companies in general, and that as this particular organization has practically ceased to do business, it should not be permitted to be revived.

The history of Lloyds associations, in so far as this State is concerned, has been discouraging. Still, viewing the matter judicially, it appears that the public policy of the State has been to permit these organizations to continue to do business under some regulation, even though many of them have ended in disaster. As to the older organizations, which enjoy many advantages not available to similar organizations formed in the last few years, the Legislature has had abundant opportunity for study of the situation and to remedy abuses. Therefore, if such an organization has complied with the law applicable to it, there should be no presumptions against it on any theory of supposed public policy. Public policy is what the Legislature declares it to be.

In 1910, pursuant to the Laws of 1910, chapter 638, which added article X to the Insurance Law, the association in question made an application to the Insurance Department for a certificate to do business.

The 1910 statute required that not later than August 1, 1910, associations claiming that they were lawfully and actually doing the business of insurance in this State as Lloyds on October 1, 1892, must file with the Superintendent of Insurance an application for a certificate authorizing the continuance of such business after January 1, 1911. Provision was made for an examination of the financial condition of such association and its methods of doing business. The Superintendent was required to grant the certificate to associations which shall have complied with the statute. The certificate, however, was revocable or subject to suspension if any such association failed to comply with the statute, or upon the failure to comply with section 302 of the Insurance Law.

As stated above, no charge is made that the statute applicable to this association has not been complied with, except as the failure to do business may be a violation. Moreover, the certificate under the act of 1910 was issued and stands unrevoked.

Under the circumstances, I fail to see any basis for this action.

In general, the oversight of Lloyds associations is committed to the Superintendent of Insurance. He has full power and authority to proceed where an association ceases to transact business for one year. (Ins. Law, § 63, subd. 1 [added by Laws of 1909, chap. 300, as amd. by Laws of 1930, chap. 196], and § 303 [added by Laws of 1910, chap. 638], which are applicable to Lloyds associations.) (*Matter of Hotchkiss*, 138 App. Div. 877.)

The Superintendent of Insurance also has power to revoke the certificate granted by him. If properly revoked, the underwriters would be guilty of a crime if they continued to write insurance. (Ins. Law, § 300 [added by Laws of 1910, chap. 638, as amd. by Laws of 1911, chap. 502].)

As these remedies are adequate, and the Superintendent of Insurance has not refused to act, for aught that appears, I fail to see any reason for the intervention of the Attorney-General by proceedings to revoke the so-called " franchise " of the association.

I also have serious doubts that any " franchise " is involved. Unincorporated associations are mere creatures of contract freely formed at common law without any grant from the sovereign. Insurance was originally a strictly private business. Times, however, have changed and regulation has become necessary in the interest of the public. The right acquired by the association here is a mere license, and, therefore, the court decisions cited in connection with corporation franchises have no application.

Possibly a court of equity might interfere, if there were no adequate remedy provided by statute. But as the Legislature has made provision for a case such as this, the remedy thus provided

is exclusive and should be followed. (*Woollcott* v. *Shubert*, 169 App. Div. 194.)

The general rule is that where a statute creates a right and prescribes a remedy for its violation or regulation that remedy is exclusive especially so when the remedy so provided is adequate.

The remedy afforded by a statute is exclusive where a right is given or privilege conferred by such statute. (*Jordan & Skaneateles Co.* v. *Morley*, 23 N. Y. 552.)

The certificate of authority granted by the State Superintendent of Insurance on December 31, 1910, to the New York Central Lloyds was essential to its continuance in the insurance business in the State of New York after that date. Section 303 of the Insurance Law expressly provides that section 63 of that law shall apply to such persons, partnerships or associations.

The procedure prescribed in section 63 may be invoked " if such corporation has ceased to transact the business of insurance for a period of one year " and the Supreme Court may grant such relief thereby as the nature of the case and the interests of the public may require.

The sole basis of the control of the State over the defendants has its source and genesis in the statute. In the absence of the statute there was no common-law right in the State to have declared unlawful that which was then lawful. The statute creates the privilege of future existence in the insurance field in this State and sets forth the machinery of regulation. The remedy of the State to correct or restrain must be found in that law and that remedy as therein contained is fully adequate to accomplish what is sought to be accomplished in this action.

My conclusion is that the defendants are entitled to judgment dismissing the complaint and findings may be presented in accordance with this memorandum and the facts as stipulated.