535 So.2d 626 (1988)
JACKSONVILLE BULLS FOOTBALL, LTD., Appellant,
v.
Michael T. BLATT, Appellee.
No. 88-463.
District Court of Appeal of Florida, Third District.
December 13, 1988.
Rehearing Denied January 11, 1989.
Battaglia, Ross, Hastings, Ducus & Andrews and Anthony S. Battaglia and Kelli Hanley Crabb, St. Petersburg, for appellant.
James L. Ferraro, Miami, for appellee.
Before DANIEL S. PEARSON, FERGUSON and JORGENSON, JJ.
DANIEL S. PEARSON, Judge.
This case concerns a judgment creditor's efforts to set aside as fraudulent certain acts of a debtor which thwarted the creditor's ability to collect his judgment.
*627 In August 1986, a federal court in California entered a judgment of more than $50,000 in favor of Michael T. Blatt against Jacksonville Bulls Football, Ltd. (hereafter, the Bulls), the owner of a football team in the then-recently defunct United States Football League. On October 3, 1986, Blatt recorded the judgment in the public records of Dade County, and the clerk of the court notified the Bulls of the recording. After the court denied the Bulls' attempt to stay the enforcement of the judgment,[1] Blatt, unsuccessful in his efforts to execute on his judgment, brought proceedings supplementary to execution, ultimately moving to set aside as fraudulent the following acts: (a) a sale of Bulls' assets to International Leasing, Inc. (International) for $150,000; (b) a sale of Bulls' assets to Sound Builders of Duval County, Inc. (Duval) for $100,000; and (c) a consent judgment in excess of $12,000,000 entered against the Bulls on October 21, 1986, in favor of Sound Builders, Inc. (SBI).[2] The trial court confirmed a master's recommendations to afford Blatt complete relief. The Bulls appeal, and we reverse.

I.

A.

The Sale from the Bulls to International
International and the Bulls entered into an agreement under which the Bulls sold its football equipment to International for $150,000. Without dispute, the evidence showed that the $150,000 paid to the Bulls was considerably in excess of the fair market value which the evidence assigned to the equipment.
Despite the conceded adequacy of the sale price, Blatt suggested that other circumstances surrounding the sale indicate that it was a fraudulent transfer and thus susceptible to being set aside. For example, Fred B. Bullard, the sole owner of International, was also the sole owner of Jax Professionals, Inc., which was the sole general partner of the Bulls; there was evidence tending to prove that the agreement and sale documents were backdated to September 1986, but in fact were not signed until October 16, 1986, the date upon which the Bulls received the notice that Blatt's foreign judgment had been recorded; and, finally, the $150,000 in cash received by the Bulls was, almost immediately after its receipt, used by them to refund money received from season ticketholders.[3]

B.

The Sale from the Bulls to Sound Builders of Duval County, Inc.
Once again, this sale  of the Bulls' office equipment  was for an indisputably adequate cash amount. And, once again, Blatt points to other circumstances which, he contends, cast doubt on the legitimacy of the transaction. Mr. Bullard, in addition to controlling the Bulls, also controlled Duval, the purchaser of the assets.[4] Moreover, since, as will be seen, SBI had already obtained a judgment of more than $12,000,000 *628 against the Bulls, Blatt claimed that it was strange indeed that SBI would have permitted its wholly-owned subsidiary, Duval, to make a $100,000 cash payment to its judgment debtor, the Bulls, when SBI, as a judgment creditor, could have executed against the Bulls' office equipment. Finally, as in the case of the $150,000 received from International, the money received from Duval was sent to season ticketholders as refunds.

C.

The Consent Judgment in Favor of Sound Builders, Inc.
The third and last act which Blatt sought to void as an attempt to defraud creditors was the $12,157,565.69 consent judgment in favor of SBI. The evidence shows that on the day following the Bulls' receipt of notice of the recording of Blatt's judgment against it, SBI (as previously noted, also controlled by Bullard) brought suit against the Bulls on promissory notes then due and owing. Four days later, the Bulls agreed to the entry of a consent judgment, and SBI promptly placed in the hands of the sheriff a writ of execution.

II.
Finding that the Bulls' use of the funds received from International and Duval to pay off the season ticketholders was "nothing more than a shifting and shielding of assets to avoid the Plaintiff's execution," the trial court declared the Bulls' sales of its football and office equipment fraudulent. We conclude to the contrary because, first, the sales themselves did not defraud or harm any creditor inasmuch as the Bulls received cash greater in value than the assets it conveyed, and, second, using the funds received to pay the season ticketholders rather than Blatt was merely a preference of certain bona fide creditors over another and, as such, did not make fraudulent the earlier sales which generated the funds.[5]

A.
Close connections between a judgment debtor and the entity to which it transfers assets may raise judicial eyebrows but do not in themselves signal a fraudulent transaction. This is especially so where, as here, the judgment debtor receives for its assets the cash equivalent or greater. See Nelson v. Cravero, 117 So.2d 764 (Fla. 3d DCA 1960) (consideration for transfer of real property by debtor to creditor-purchaser was adequate, and thus third-party creditor failed to establish prima facie case for setting aside conveyance as fraudulent). Compare Ostend Realty Co. v. Biscayne Realty & Ins. Co., 99 Fla. 1221, 128 So. 643 (1930) (affirming denial of motion to dismiss complaint which alleged conveyance without consideration of debtor's property to volunteer purchaser) with Godard v. Crenshaw, 136 Fla. 78, 186 So. 822 (1938) (affirming dismissal of complaint which failed to allege with certainty that there was inadequate consideration given by creditor for debtor's property). This is not to say, however, that a judgment debtor's transfer of an asset for adequate consideration ends the inquiry. It is, to the contrary, well understood that
"[a] purchase made by one not a creditor is fraudulent and void as against creditors, even though the purchaser has paid an adequate consideration, where the seller has at the time a purpose or intent to defraud his creditors, or to hinder and delay them in the collection of their debts, and the purchaser knew of such purpose or had knowledge of such facts or circumstances as would have induced an ordinarily prudent person to make inquiry, and which inquiry, if made with reasonable diligence, would have led to the discovery of such fraudulent purpose of the seller, and the buyer did not make such inquiry."

Jackson v. Citizens' Bank & Trust Co., 53 Fla. 265, 283, 44 So. 516, 522 (1907) (emphasis added.)
See also Williams v. Finlayson, 49 Fla. 264, 38 So. 50 (1905) (conveyance may be *629 set aside even though purchaser has paid fair market value if seller/debtor's purpose was to defraud creditors and reasonable purchaser would have known of such purpose).
But the mere fact that suit is pending against a person, or that a person is indebted to another, does not in and of itself render fraudulent that person's conveyance of property. Bay View Estates Co. v. Southerland, 114 Fla. 635, 154 So. 894 (1934); Stelle v. Dennis, 104 Fla. 384, 140 So. 194 (1932); Orlando Light Bulb Service, Inc. v. Laser Lighting and Electrical Supply, Inc., 523 So.2d 740 (Fla. 5th DCA 1988); Kirk v. Edinger, 380 So.2d 1336 (Fla. 5th DCA 1980); McCrary v. Bobenhausen, 366 So.2d 77 (Fla. 1st DCA 1978). An owner of property has the right to dispose of it as he or she sees fit; the only restriction on that right is that no transfer may be made which injures or prejudices existing creditors' rights. Bay View Estates Co. v. Southerland, 114 Fla. 635, 154 So. 894.
Thus, if a judgment debtor disposes of assets for adequate cash, the transaction will not be considered fraudulent in the absence of a showing that the debtor intended to give the funds received to other than existing creditors. Otherwise stated, it is not fraudulent to give the funds to some but not all existing creditors, even though the effect might be to injure or prejudice an existing creditor who was not chosen to receive the debtor's largesse. These so-called preferential transfers are not deemed fraudulent even though their natural effect is to hinder or delay the non-preferred creditors. Jackson v. Citizens' Bank & Trust Co., 53 Fla. 265, 44 So. 516; Godard v. Crenshaw, 136 Fla. 78, 186 So. 822; Jones v. Wear, 111 Fla. 69, 149 So. 345 (1933); Vickers v. Glenn, 102 Fla. 535, 136 So. 326 (1931); Baldwin v. La Fayette Land Co., 62 Fla. 129, 56 So. 943 (1912). A creditor may properly accept a preference even if the creditor knows that the debtor is making a "calculatedly preferential transfer" for the purpose of disfavoring other creditors. Baldwin v. La Fayette Land Co., 62 Fla. 129, 56 So. 943; Miles v. Katz, 405 So.2d 750 (Fla. 4th DCA 1981); Mission Bay Campland, Inc. v. Sumner Financial Corp., 731 F.2d 768 (11th Cir.1984).

B.
Blatt argues, however, that even if a transfer for adequate funds which are thereafter used to prefer other bona fide creditors is not fraudulent, the refunds to the season ticketholders were not payments to bona fide creditors. Contrary to the trial court, we find this argument to be without merit.[6]
It is generally recognized that admission tickets are revocable licenses. See Marrone v. Washington Jockey Club, 227 U.S. 633, 33 S.Ct. 401, 57 L.Ed. 679 (1913) (race track ticket); Burnham v. Flynn, 189 N.Y. 180, 82 N.E. 169 (1987) (theater ticket); Collister v. Hayman, 183 N.Y. 250, 76 N.E. 20 (1905) (theater ticket); Bickett v. Buffalo Bills, Inc., 122 Misc.2d 880, 472 N.Y.S.2d 245 (Sup.Ct. 1983) (football season tickets); Boswell v. Barnum & Bailey, 135 Tenn. 35, 185 S.W. 692 (1916) (circus ticket); Jordan v. Concho Theatres, Inc., 160 S.W.2d 275 (Tex.Civ.App. 1941) (theatre tickets). While the ticket itself is not a contract, it is considered evidence of the contract between the proprietor and the ticketholder, entitling the holder to attend a specified performance at a specified date and time. Collister v. Hayman, 183 N.Y. 250, 76 N.E. 20 (1905).[7]
*630 As a revocable license, a ticket can be revoked by the proprietor at any time even though consideration has been paid by the ticket holder. However, where the proprietor revokes or denies the holder's admission to a performance, the holder has a cause of action for breach of contract in which he is entitled to recover as damages the consideration paid. Marrone v. Washington Jockey Club, 227 U.S. 633, 33 S.Ct. 401, 57 L.Ed. 679; Burnham v. Flynn, 189 N.Y. 180, 82 N.E. 169; Boswell v. Barnum & Bailey, 135 Tenn. 351, 185 S.W. 692. Because, upon cancellation of the upcoming season's football schedule, the Bulls' season ticketholders would have had causes of action against the Bulls for breach of contract to recover the moneys paid for their tickets, the Bulls were legally obligated to refund the ticket moneys when the games were cancelled. Therefore, since the ticketholders were bona fide creditors, the payments to them, albeit preferences, were perfectly valid.[8]

III.
Lastly, we turn to the consent judgment in favor of SBI. There is little doubt that in consenting to the entry of judgment against it, the Bulls were calculatedly preferring SBI over Blatt.[9] Under the Florida Enforcement of Foreign Judgments Act, §§ 55.501-.509, Fla. Stat. (1985), no execution or other process for enforcement of Blatt's foreign judgment could issue until thirty days after the mailing of the clerk's notice. § 55.505, Fla. Stat. (1985).[10] SBI brought suit against the Bulls the day after the Bulls received the notice that Blatt's foreign judgment had been recorded in Miami. Then, within the thirty-day period, the Bulls agreed to the entry of the consent judgment, and SBI promptly filed its writ of execution. Thus, because, unlike the domestic judgment in favor of SBI, the foreign judgment in favor of Blatt was subject to an automatic thirty-day waiting period before execution upon it could issue, SBI was able to gain a creditor's priority over Blatt, and the Bulls were able to give preference to SBI over Blatt.
This is so because the recording of a judgment does not automatically create a lien on the personal property of a debtor. Steinbrecher v. Cannon, 501 So.2d 659 (Fla. 1st DCA 1987). The judgment creditor's lien attaches to personal property, and priority is established, at the time the writ of execution is delivered to the sheriff in the county where the personal property is located. Evins v. Gainesville National Bank, 80 Fla. 84, 85 So. 659 (1920); Love v. Williams, 4 Fla. 126 (1851); Steinbrecher v. Cannon, 501 So.2d 659; Accent Realty of Jacksonville, Inc. v. Crudele, 496 So.2d 158 *631 (Fla. 3d DCA 1986); Flagship State Bank of Jacksonville v. Carantzas, 352 So.2d 1259 (Fla. 1st DCA 1978); Smith v. Purdy, 272 So.2d 545 (Fla. 3d DCA 1973); Black v. Miller, 219 So.2d 106 (Fla. 3d DCA 1969). Here, despite the fact that Blatt's judgment was obtained prior to SBI's judgment, SBI's writ of execution was docketed with the sheriff prior to Blatt's. Obviously, availing oneself of the legal advantages given to domestic judgments over foreign judgments cannot constitute fraud.
REVERSED.
NOTES
[1] This recording, notice, and the action to stay were taken pursuant to the Florida Enforcement of Foreign Judgments Act, §§ 55.501-.509, Fla. Stat. (1985).
[2] These proceedings were brought pursuant to Section 56.29(6)(b), Florida Statutes (1985), which provides:

"When any gift, transfer, assignment or other conveyance of personal property has been made or contrived by defendant to delay, hinder or defraud creditors, the court shall order the gift, transfer, assignment or other conveyance to be void and direct the sheriff to take the property to satisfy the execution. This does not authorize seizure of property exempted from levy and sale under execution of property which has passed to a bona fide purchaser for value and without notice. Any person aggrieved by the levy may proceed under ss. 56.16-56.20."
[3] The proceeds of the sale to International (as well as the $100,000 in proceeds of the sale to Duval, see infra) were deposited into the general operating account of B & S Football Partners, the managing entity and agent of the Bulls. The existence of this entity is of no significance as the assets in the operating account were at all times the assets of the Bulls.
[4] Bullard was shown to be a sixty percent shareholder of Holiday Bank, which owned Gateway Equities, Inc., which owned SBI, which owned Duval.
[5] Under certain circumstances, not applicable here, preferences may be set aside as part of bankruptcy proceedings. See 11 U.S.C. § 547 (1982).
[6] Blatt also claims that there is no evidence in the record that the money derived from the transfers actually went to the ticketholders. However, a bookkeeper testified and showed to the court a spreadsheet which indicated that payments were made to ticketholders. The testimony and spreadsheet constituted expert opinions, and "[u]nder current law, the burden of challenging the sufficiency of the basis for the opinion rests with the party against whom it is offered." City of Hialeah v. Weatherford, 466 So.2d 1127, 1129 (Fla. 3d DCA 1985). See §§ 90.705, 90.956, Fla. Stat. (1985). Blatt did not object to the evidence, and the expert opinions were by themselves sufficient proof that the money went to the ticketholders.
[7] While not explicitly holding that football season tickets create a legal obligation between the ticketholders and the issuer, two other courts have treated the relationship as contractual. See Richman v. Chicago Bears Football Club, Inc., 127 Ill. App.3d 75, 82 Ill.Dec. 225, 468 N.E.2d 487 (1984); Baltimore Football Club, Inc. v. Superior Ct. (Ramco), 171 Cal. App.3d 352, 215 Cal. Rptr. 323 (1985).
[8] The trial court based its determination, in part, upon Bullard's testimony that the Bulls considered its obligation to refund the season ticketholders' moneys to be a "moral" one. However, the subjective intent of the Bulls in refunding the ticket moneys is irrelevant, because as a matter of law the Bulls were legally obligated to repay the creditor ticketholders. Moreover, Bullard's "moral" obligation testimony was simply a statement of the Bulls' reason for preferring the ticketholders over other creditors, including Blatt.
[9] Blatt has never challenged the validity of the Bulls' underlying obligation to SBI in the form of promissory notes which resulted in the entry of the consent judgment. Because a bona fide debt was owed by the Bulls to SBI, SBI had a valid legal claim against the Bulls, and thus the judgment itself cannot be set aside as a fraud on creditors.
[10] The Florida Enforcement of Foreign Judgments Act, Sections 55.501-.509, Florida Statutes (1985), was upheld as constitutional in the case of GNLV Co. v. Featherstone, 504 So.2d 63 (Fla. 4th DCA 1987). Florida, as well as 29 other states, has adopted the 1964 version of the Uniform Enforcement of Foreign Judgments Act. The purpose of the 1964 Uniform Act was to simplify the enforcement of foreign judgments and to preserve the defendant's right to assert defenses as to the validity of a foreign judgment. See Landon v. Artz, 6 Kan. App. 2d 617, 631 P.2d 1237 (1981); Producers Grain Co. v. Carroll, 546 P.2d 285 (Ok.Ct.App. 1976). Accordingly, while domestic judgment creditors may seek a writ of execution immediately, foreign judgments are subject to an automatic stay period to permit a challenge as to whether the foreign judgment is entitled to the full faith and credit of the domestic state.