[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11368
Non-Argument Calendar
_____

D.C. Docket No. 8:09-cv-01850-JSM-TBM

KEARNEY CONSTRUCTION COMPANY, LLC,

Plaintiff,

versus

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

Defendant-Third Party Plaintiff
Appellee,

FLORIDA SOIL CEMENT, LLC., et al,

Defendants,

KEARNEY LLC, et al.,

Third Party Defendants,

FTBB, LLC,

Third Party Defendant
Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 19, 2017)

Before WILLIAM PRYOR, JORDAN and ROSENBAUM, Circuit Judges.

PER CURIAM:

FTBB, LLC, appeals the judgment in favor of Travelers Casualty and Surety Company of America. Travelers initiated a proceeding supplementary to void an assignment to FTBB of a monetary judgment Regions Bank had against Bing Kearney. Fed. R. Civ. P. 69(a)(1); Fla. Stat. §§ 56.29, 726.105. The district court ruled that the assignment was fraudulent and voided the priority lien that FTBB acquired from Regions. We affirm.

## I. BACKGROUND

In December 2007, Kearney's son, Clayton, obtained in excess of $11 million for injuries he incurred in an automobile accident. Before Clayton collected the payment, his family formed Moose Investments of Tampa Bay, LLC, to invest the settlement proceeds. Clayton was named the sole owner of Moose, but his father served as its co-manager until August 2012. Moose kept its records at the offices of several Kearney companies and used a company bookkeeper.

2

In January 2011, Kearney formed FTBB as a shelf corporation. FTBB was owned and managed by Moose.

Kearney accumulated large debts. On October 28, 2011, Travelers obtained a judgment against Kearney for $3.7 million, which it executed in September 2014. When served with a writ of garnishment, USAmeriBank responded that it owed Kearney $700,022.29. On September 28, 2012, Regions obtained a judgment against Kearney for $3,407,620.35, and it served a writ of garnishment on USAmeriBank in May 2013.

Meanwhile, in March 2012, Moose granted Kearney a line of credit of $5 million at 3 percent annual interest in exchange for his execution of a promissory note and a security agreement. Kearney drew freely on the line of credit. On August 12, 2012, Moose filed a Uniform Commercial Code-1 that notified creditors it had an interest in Kearney's property.

On March 17, 2015, Kearney borrowed $3.5 million from a life insurance policy. Kearney transferred the money to Moose, ostensibly to pay down his line of credit.

Later that month, Kearney entered mediations with Regions. James Reed, Kearney's attorney, advised Kearney to activate FTBB to purchase the Regions judgment. On April 8, 2015, Moose transferred $2.625 million to the mediator's trust fund. The next day, Clayton executed an operating agreement for FTBB.

3

On April 21, 2015, Regions agreed to sell and assign its judgment against Kearney to FTBB for $2.625 million. That same day, Reed became a manager of Moose. On April 22 and 23, Regions assigned its judgment to FTBB, and Moose paid $2.625 million to Regions. In a side settlement, FTBB agreed to pay, but Moose paid, $50,000 to Kearney's wife as a partial reimbursement of costs and expenses she had incurred during the fraudulent transfer action.

On April 28, 2015, Kearney directed the attorney for FTBB, Frank Miranda, to refrain from making any commitments for the company before consulting with Kearney's attorney. After the assignment, Regions transferred all execution-related documents to Kearney's attorney "at [Kearney's] request as representative of FTBB," despite a provision in the purchase and sale agreement instructing Regions to deliver the documents to FTBB "in connection with judgment collection efforts." Miranda received a copy of Kearney's request.

On May 1, 2015, Kearney stipulated to a judgment in favor of Regions in its garnishment action. Four days later, FTBB was substituted for Regions in the action, after which FTBB moved for entry of a final judgment. FTBB did not collect from Kearney's accounts at USAmeriBank.

On June 1, 2015, Travelers moved for proceedings supplementary in its garnishment action and to implead FTBB. Travelers served a second writ of garnishment on USAmeriBank, which responded that it owed Kearney

4

$1,158,037.38. Kearney, Moose, and FTBB moved to dissolve the writ and argued that FTBB had priority over Travelers for garnishment of Kearney's accounts at USAmeriBank. Travelers amended its complaint to allege a fraudulent transfer and requested as relief to void the assignment from Regions to FTBB or to equitably subordinate the priority FTBB had over Travelers to the USAmeriBank accounts.

During an evidentiary hearing held by a magistrate judge, Travelers submitted evidence that Kearney managed his son's finances and wrote checks from his son's bank account and the Moose account. Clayton exhibited little understanding of the business activities of Moose, the line of credit for his father, the Regions settlement, or the purpose for FTBB. Kearney testified that his payment to Moose was unrelated to the Regions settlement and that he benefited by paying Moose instead of Regions. Kearney stated that he had forgotten most details involved in the negotiations, but he remembered that, after reaching a settlement with Regions, he searched for a buyer for the Regions settlement, Clayton agreed to be the purchaser, and Reed suggested transferring the judgment to FTBB. Kearney disavowed using FTBB to hinder Travelers from collecting its judgment.

Reed testified that he had served numerous years as advisor to the Kearney family and Kearney's companies and the principal advisor to Clayton and Moose and that he served as a manager of Moose and ran the daily operations of FTBB.

5

Reed stated that he advised Kearney to settle the fraudulent transfer action with Regions because, in his opinion, the action was overvalued and FTBB did not have an expert witness. Kearney and Reed testified that purchasing the Regions judgment was a good investment for Moose because of the discount in price, the ability to recouperate about $700,000 from USAmeriBank, the likelihood of collecting on the judgment, and the protection it provided Moose in relation to its UCC-1 action against Kearney. Reed stated that FTBB garnished Kearney's account at Platinum Bank and collected about $10,000, although the check had yet to be deposited by FTBB. According to an attorney for Regions, neither Moose nor FTBB were involved in negotiating the purchase price of the Regions judgment.

The district court adopted the findings and recommendation of the magistrate judge to enter a judgment in favor of Travelers. The district court ruled that the assignment of the Regions judgment was a fraudulent transaction intended to hinder or defraud Travelers. The district court found that "Kearney, with the counsel and assistance of James Reed, concocted and orchestrated a scheme" to "purchase and assign[] . . . the Regions judgment [to] Clayton Kearney's entities to place that judgment in the hands of a friendly creditor and thereby block Travelers from reaching Mr. Kearney's funds at USAmeriBank." The district court discredited Kearney's explanation for the payment to Moose; rejected the argument that Clayton decided to purchase the Regions judgment; and regarded

6

Moose and FTBB as "insiders" acting at Kearney's behest. The district court based its finding on several events. Those events included: the control Kearney exercised over Clayton's companies; the line of credit Kearney obtained from Moose; Kearney's failure to use the money he withdrew from his life insurance or the line of credit to pay the Travelers and Regions judgments; Kearney's "capital injectment" of $3.5 million to Moose "ten days [after a district court judge presiding over the Regions garnishment action] found the largest account at USAmeriBank [containing about $625,000] was . . . not exempt from garnishment"; Kearney's use of FTBB; the transfer by Moose, "while flush with funds," of the settlement amount to the mediator and its purchase of the Regions judgment for FTBB, which was penniless; and the control Kearney exercised over FTBB after the assignment. The district court fashioned the "precise remedy" of "voiding . . . only the transfer to FTBB of Regions' priority lien position relative to the USAmeriBank garnished funds and FTBB's claim to the same in all pending collection actions" based on its conclusion that "only the portions of the settlement agreement between the Kearneys and Regions which were directed toward the transfer of Regions' position in the garnishment litigation were intended to hinder the collection of USAmeriBank funds by outside creditors."

## II. STANDARDS OF REVIEW

7

"[A]fter a bench trial [in a supplementary proceeding to void a fraudulent transfer], we review the district court's conclusions of law *de novo* and [its] factual findings for clear error." *Nat'l Mar. Servs., Inc. v. Straub*, 776 F.3d 783, 786 (11th Cir. 2015) (quoting *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1319 (11th Cir. 2011)).

## III. DISCUSSION

Under Florida law, which the parties agree applies, judgment creditors have tools to counteract fraudulent transfers by debtors. The Florida proceedings supplementary statute states that when a "transfer, assignment or other conveyance of personal property has been made or contrived by the judgment debtor to delay, hinder, or defraud creditors, the court shall order the . . . transfer, assignment or other conveyance to be void . . . ." Fla. Stat. § 56.29(6)(b) (2015). And Florida gives the district court discretion in fashioning appropriate relief: it "may enter any orders, judgments, or writs required to carry out the purpose of this section, including those orders necessary or proper to subject property or property rights of any judgment debtor to execution and including entry of money judgments against any impleaded defendant." *Id.* § 56.29(9). "Whether a defendant's actions are made or contrived to "delay, hinder, or defraud" can be determined with reference to section 726.105(1)" of the Florida Uniform Fraudulent Transfers Act, *Mejia v. Ruiz*, 985 So. 2d 1109, 1112 (Fla. Dist. Ct. App. 2008), which identifies what

8

transactions are fraudulent and contains a non-inclusive list of 11 factors that are indicia of fraud, *see Gen. Elec. Co. v. Chuly Int'l, LLC*, 118 So. 3d 325, 327 (Fla. Dist. Ct. App. 2013) (quoting *Stephens v. Kies Oil Co., Inc.*, 386 So. 2d 1289, 1290 (Fla. Dist. Ct. App. 1980)). Because "[c]onsideration may . . . be given to factors other than those listed," a reviewing court "may take into account the circumstances surrounding the conveyance." *Mejia*, 985 So. 2d at 1113.

The district court did not err when it determined that the assignment of the Regions judgment and its priority lien to FTBB was a fraudulent transfer in violation of section 56.29. "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation." Fla. Stat. § 726.105(1). Kearney implemented a scheme to acquire an obligation he had incurred with Regions in order to hinder Travelers. He did so by making "[t]he transfer or obligation . . . to an insider," Fla. Stat. § 726.105(2), who may consist of "[a] relative of the debtor or . . . [his] general partner" or "[a] corporation of which the debtor is a director, officer, or person in control," *id.* § 726.102(8). Kearney effectuated his fraud through exploiting his unsophisticated son, Clayton, and his son's companies, Moose and FTBB. Kearney controlled Clayton's companies, at least indirectly, by issuing instructions to the attorney for FTBB and through Reed, who served as the manager of Moose and the administrator of FTBB. Kearney submitted to Moose $3.5 million, which

9

coincided dubiously with its payment of $2.625 million for the Regions judgment. Clayton agreed obliviously to activate FTBB to serve as the straw purchaser of the Regions judgment. And FTBB used the priority lien it acquired from Regions to shelter the USAmeriBank account from garnishment by Travelers.

FTBB argues that Travelers was not hindered because it "remained in exactly the same position after the Transfer[] that it was immediately before the Transfer," but we disagree. Before the Transfer, Travelers had a lien inferior that entitled it to garnish any of Kearney's nonexempt assets not collected by Regions after it satisfied its judgment of $3,407,620.35. Had Kearney satisfied the Regions judgment with the $3.5 million he transferred to Moose or with money he could have drawn on his line of credit, Travelers could have garnished the USAmeriBank account. The Transfer enabled FTBB to do more than step into the shoes of Regions. The Transfer satisfied the Regions judgment and gave FTBB a priority lien that it used to protect Kearney's USAmeriBank account.

FTBB argues that the assignment, which resulted in "giv[ing] funds to [Regions] but not to all existing creditors," a "so-called preferential transfer[][,] is not fraudulent." *See Jacksonville Bulls Football, Ltd. v. Blatt*, 535 So. 2d 626 (Fla. Dist. Ct. App. 1988). But in *Jacksonville Bulls*, the debtor exhausted his assets to satisfy creditors. The debtor paid bona fide creditors using the proceeds of advantageous sales to two friendly creditors and consented to a judgment in favor

10

of a third friendly creditor, who promptly executed its judgment. *Id.* at 627–28. In contrast, Kearney shielded his assets from creditors. Although Kearney—through Moose and FTBB—satisfied his debt to Regions, in so doing, Kearney—through FTBB—acquired a priority lien that enabled him to retain his nonexempt assets.

FTBB was not a bona fide creditor. FTBB served solely as the straw purchaser of the Regions judgment. *See In re Miller*, 39 F.3d 301, 307 (11th Cir. 1994) (discussing in a bankruptcy case a "bona fide creditor [is] distinguish[able] . . . from those involving . . . transfers to non-creditors and/or family members, which merit closer scrutiny"). Its acquisition of the Regions judgment, for which it did not pay, was intended to benefit Kearney.

 "Under section 56.29(5) a court may fashion an appropriate equitable remedy to afford a judgment creditor as complete relief as possible," *Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145, 150 (Fla. Dist. Ct. App. 1994), and the district court exercised its equitable powers to fashion an appropriate remedy for an unusual fraudulent conveyance. The district court refused to unwind the transaction between FTBB and Regions, which left the bank, a seemingly innocent party, undamaged. And the district court punished Kearney for his machinations by voiding the assignment of the priority lien to FTBB, which restored to Travelers the ability to garnish the funds in Kearney's USAmeriBank account.

## IV. CONCLUSION

11

We **AFFIRM** the judgment in favor of Travelers.