[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11942
Non-Argument Calendar

_____

D.C. Docket No. 8:09-cv-01841-EAK-MAP

REGIONS BANK,
an Alabama state chartered bank, as successor in interest to AmSouth Bank,

Plaintiff,

FTBB, LLC,

Plaintiff - Appellee,

versus

G3 TAMPA, LLC,
a Florida limited liability company,

Defendant,

BING CHARLES W. KEARNEY, JR.,
BRIAN SEEGER,
TRACY J. HARRIS, JR.
SECOND SUCCESSOR LARRY S. HYMAN,
assignee for G3 Tampa, LLC, a Florida limited liability company,
BK FAMILY INVESTMENT PARTNERSHIP I, LTD, et al.,

Defendants - Appellants,

TRAVELERS CASUALTY & SURETY
COMPANY OF AMERICA,

Intervenor - Appellee.

_____

Appeal from the United States District Court
For the Middle District of Florida
_____

(March 11, 2019)

Before MARTIN, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Bing Kearney appeals the post-judgment decision of the district court that his bank account is subject to garnishment by his creditors because he and his wife hold it as a joint tenancy rather than a tenancy by the entireties. Having reviewed the evidence about the opening of the account and the Florida law governing joint ownership of bank accounts, we affirm.

\* \* \*

This appeal arises out of federal litigation over the financing of a Gulfstream jet. Regions Bank sued Kearney and other guarantors of the debt in 2009 to collect more than $5 million they owed. After a bench trial in 2012, the district court entered a $3.4 million judgment against Kearney, which this Court affirmed. *Regions Bank v. Kearney*, 597 F. App'x 1012, 1015 (11th Cir. 2014).

In an effort to collect on that judgment, Regions served USAmeriBank with a writ of garnishment on several Florida bank accounts that Kearney held there.

2

The account that is the subject of this appeal (hereinafter "the 0056 account") contained $625,305 and was jointly held by Kearney and his wife. Kearney moved to dissolve the writ of garnishment on the grounds that the funds were held as a tenancy by the entireties and therefore could not be attached by a creditor of one spouse.[1] In 2013, after an evidentiary hearing at which Kearney and other witnesses testified about Kearney's intent to open the 0056 account as a tenancy by the entireties, the magistrate judge issued a report and recommendation that agreed with Kearney's characterization of the account. The district court rejected the recommendation of the magistrate judge in 2015, finding that the clear and unambiguous evidence of the account's signature card established that it was opened as a joint tenancy without the need to consider any additional evidence, and denying Kearney's motion to dissolve the writ of garnishment. *Regions Bank v. Hyman*, 91 F. Supp. 3d 1234, 1255–57 (M.D. Fla. 2015).

---

[1] Tenancy by the entireties is a form of joint ownership of property that is unique to married couples. Property held by spouses as a tenancy by the entireties is indivisible, because each spouse is possessed of the whole. *Beal Bank, SSB v. Almand & Assocs.*, 780 So. 2d 45, 52–53 (Fla. 2001). Other forms of joint ownership are tenancy in common and joint tenancy with right of survivorship. *Id.* at 53. The distinction matters to Kearney because joint tenants are considered to each possess their own equal share of the whole when they both are alive. *Id.* Thus, "a creditor of one of the joint tenants may attach the joint tenant's portion of the property to recover that joint tenant's individual debt." *Id.* By contrast, "when property is held as a tenancy by the entireties, only the creditors of both the husband and wife, jointly, may attach the tenancy by the entireties property; the property is not divisible on behalf of one spouse alone, and therefore it cannot be reached to satisfy the obligation of only one spouse." *Id.*

Kearney then entered into mediations with Regions, and Regions agreed to sell its $3.4 million judgment against Kearney to FTBB, LLC, a shelf corporation formed by Kearney, for $2.625 million. *Kearney Constr. Co., LLC v. Travelers Cas. & Sur. Co. of Am.*, 712 F. App'x 907, 909 (11th Cir. 2017). FTBB was substituted for Regions as a party to the judgment and garnishment, but it did not collect from Kearney's USAmeriBank accounts. *Id.* at 910.

Next, the 0056 account was garnished by Travelers Casualty & Surety Company of America ("Travelers") in an attempt to collect on a separate $3.7 million judgment it had won against Kearney in 2011. *Id.* at 909. Kearney and FTBB objected to that writ of garnishment and moved to dissolve it, arguing that FTBB had a priority claim to the funds. *Id.* at 910. Travelers alleged that the assignment from Regions to FTBB was a fraudulent transfer and asked the court to void the assignment or to subordinate FTBB's claim to Travelers'. *Id.* That district court agreed with Travelers and granted it a priority claim on the funds. *Id.* at 910–11. On appeal, this Court affirmed the finding that the transfer to FTBB was fraudulent and approved the remedy fashioned by the district court. *Id.* at 912–13.

In the present action, the district court had stayed its proceedings pending the resolution of the Travelers action. In 2018, after our mandate issued, it entered an order granting Travelers priority over the funds in the 0056 account. Kearney

4

now appeals that 2018 order and the order from 2015 denying Kearney's motion to dissolve the writ of garnishment.

On appeal in this Court, Travelers filed a motion to intervene and to dismiss the appeal from the 2015 judgment as untimely. Kearney responded with a motion to strike. Our Court denied the motion to strike and allowed Travelers to intervene; Travelers has filed the sole appellee's brief in this appeal. We denied the motion to dismiss, reasoning that the 2015 judgment was not a separately final and appealable order because it did not completely resolve all of the issues in the garnishment proceedings. Order, Sept. 12, 2018, ECF No. 51 at 2–3. Both the 2015 and 2018 orders of the district court pertaining to the 0056 account are thus before us on appeal.

\* \* \*

Kearney's main argument is that the district court incorrectly concluded that the 0056 account was held as a joint tenancy rather than as a tenancy by the entireties. The parties dispute the standard of review that applies to this question. The threshold issue is the decision of the district court that the account signature card was unambiguous, and whether a contract is ambiguous is a question of law. *Strama v. Union Fid. Life Ins. Co.*, 793 So. 2d 1129, 1132 (Fla. 1st Dist. Ct. App. 2001). We are thus entitled to review that question *de novo*. *Frulla v. CRA Holdings, Inc.*, 543 F.3d 1247, 1252 (11th Cir. 2008). Were we to agree with

5

Kearney that the card is ambiguous, we would then review the factual findings of the district court for clear error and its evidentiary rulings for abuse of discretion. *See Sitomer v. Orlan*, 660 So. 2d 1111, 1115 (Fla. 4th Dist. Ct. App. 1995) ("Whether the parties created a tenancy by the entireties in a bank account . . . is a question of fact."); *United States v. Magluta*, 418 F.3d 1166, 1177 (11th Cir. 2005) ("We review the district court's evidentiary rulings for an abuse of discretion . . . and we may overturn findings of fact only if clearly erroneous").

Florida law mandates a presumption in favor of ownership of bank accounts by spouses as tenancies by the entireties. "Any deposit or account made in the name of two persons who are husband and wife shall be considered a tenancy by the entirety unless otherwise specified in writing." Fla. Stat. § 655.79(1); *accord Beal Bank, SSB v. Almand & Assocs.*, 780 So. 2d 45, 58 (Fla. 2001) ("if the signature card of the account does not expressly disclaim the tenancy by the entireties form of ownership, a presumption arises that a bank account titled in the names of both spouses is held as a tenancy by the entireties"). Kearney maintains that he always intended to open the account as a tenancy by the entireties, on the advice of his lawyers, in order to protect from garnishment the funds he would deposit there.

Standing between Kearney and this presumption, however, is the signature card he signed when he opened the 0056 account. Under Florida law, that card can

be the dispositive piece of evidence; absent evidence of fraud, the signature card's express disclaimer of a tenancy by the entireties ends the inquiry into what the owner intended. *Beal Bank*, 780 So. 2d at 61. What Kearney's signature card says is undisputed by the parties. In the section titled "OWNERSHIP OF ACCOUNT - CONSUMER PURPOSE (Select one and initial)," the box for "Multiple-Party Account" is checked and initialed, while the box immediately below it for "Multiple-Party Account - Tenancy by the Entireties" is not.

```
USAmeriBank
113 E Whiting ST
Tampa, FL 33602

Member FDIC
OWNERSHIP OF ACCOUNT - CONSUMER PURPOSE (Select one and
initial):
  [ ] _____  Single-Party Account   [X] __  Multiple-Party Account
  [ ] _____  Multiple-Party Account - Tenancy by the Entireties
  [ ] _____  Trust-Separate Agreement Dated: _____
  [ ] _____  _____

RIGHTS AT DEATH (Select one and initial):
  [ ] _____  Single-Party Account
  [ ] _____  Single-Party Account With Pay-on-Death Designation
              (name beneficiaries below)
  [X] _____  Multiple-Party Account With Right of Survivorship
  [ ] _____  Multiple-Party Account With Right of Survivorship and
              Pay-on-Death Designation (name beneficiaries below)
  [ ] _____  Multiple-Party Account Without Right of Survivorship
```

Kearney argues, and the magistrate judge agreed, that this designation was ambiguous. He asserts that the layout of this section of the card is confusing and that one could reasonably believe that the checked box belonged to "Tenancy by the Entireties" below it. We disagree. Reviewing the signature card for ourselves,

7

we find it unambiguous. It clearly offered the option of a tenancy by the entireties and Kearney clearly selected something else, a joint tenancy with rights of survivorship.[2]

Florida's Supreme Court precedent is also clear: an express disclaimer of a tenancy by the entireties can arise when "the financial institution affirmatively provides the depositors with the option on the signature card to select a tenancy by the entireties among other options, and the depositors expressly select another form of ownership option." *Beal Bank*, 780 So. 2d at 60. Kearney's signature card thus expressly disclaimed a tenancy by the entireties and otherwise specified in writing a different form of ownership. *Wexler v. Rich*, 80 So. 3d 1097, 1099–100 (Fla. 4th Dist. Ct. App. 2012) (finding thus when account owner checked "Multiple Party Account" rather than "Multiple-Party Account—Tenancy by the Entireties"); *cf. Beal Bank*, 780 So. 2d at 60 (a designation of a joint tenancy with right of survivorship, without more, is not a disclaimer of tenancy by the entireties).

---

[2] Kearney testified before the magistrate judge that he first attempted to open the 0056 account as a tenancy by the entireties held by himself, his wife, and his son, going so far as to have all three of them sign the signature card. When USAmeriBank told him this was impossible, the bank produced a new signature card that was partially filled out, with "Multi-Party Account" checked. He and his wife initialed next to the *X* on the "Multi-Party Account" line without really looking: "I didn't have my glasses on, so I just signed where she put the *X*." [R. doc. 363 at 54] Although, as we next discuss, we will not consider this extrinsic evidence of intent, we note that Florida law imposes a duty to learn the contents of a contract before signing it and so presumes that a signing party has done so. *See Wexler v. Rich*, 80 So. 3d 1097, 1100–01 (Fla. 4th Dist. Ct. App. 2012).

8

Accordingly, Kearney is not entitled to Florida's presumption in favor of ownership as a tenancy by the entireties.

Neither is he entitled to have us consider extrinsic evidence of his intent to open the account as a tenancy by the entireties. As we have noted, under Florida law, the inquiry into the owner's intent ends with an express designation on the signature card. *Beal Bank*, 780 So. 2d at 60. Kearney's remaining arguments all involve the district court's discretion to consider evidence beyond the signature card, and they therefore fail. He argues that the confusing card layout creates a "latent ambiguity" requiring the consideration of parol evidence, but the contract itself is not the kind of "extraneous circumstance" or "collateral matter" that can create a latent ambiguity under Florida law. *C.f., e.g.*, *Mac-Gray Servs., Inc. v. Savannah Assocs. of Sarasota, LLC*, 915 So. 2d 657, 659–60 (Fla. 2d Dist. Ct. App. 2005) (fact of intervening lease renewal rendered lease addendum latently ambiguous); *Ace Elec. Supply Co. v. Terra Nova Elec., Inc.*, 288 So. 2d 544, 547 (Fla. 1st Dist. Ct. App. 1973) (history of past dealings under guaranty rendered guaranty latently ambiguous). The district court could not have abused its discretion to hear extrinsic evidence because it had none. It was required to stop its inquiry after examining the signature card. Kearney's arguments that the bank improperly failed to offer him the option of a tenancy by the entireties and that he

9

told bank employees he wanted a tenancy by the entireties are barred by the clear evidence of the signature card.

We also affirm that the district court was not required to hold its own evidentiary hearing before rejecting the findings of the magistrate judge because the magistrate judge did not make any credibility findings. *Cf. United States v. Powell*, 628 F.3d 1254, 1256–57 (11th Cir. 2010) (a district court abuses its discretion when it rejects credibility findings of the magistrate judge without conducting its own live hearing).

**AFFIRMED.**

10